STATE of Wisconsin, Plaintiff-Respondent-Cross-Appellant-Petitioner,

v.

Kenneth E. ALLES and Nancy A. Waynert,
Defendants-Appellants-Cross-Respondents.

Supreme Court

*No. 80-1379-CR. Argued January 7, 1982.—Decided March 2, 1982.*

(Also reported in 316 N.W.2d 378.)

For the plaintiff-petitioner the cause was argued by *David T. Flanagan,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

There was a joint brief by *Robert J. Lerner* and *Perry, First, Reiher, Lerner & Quindel, S.C.,* and oral argument by *Robert J. Lerner,* all of Milwaukee, for Nancy Waynert; and by *Franklyn M. Gimbel, Thomas Brown* and *Gimbel, Gimbel & Reilly,* all of Milwaukee, and oral argument by *Franklyn M. Gimbel,* for Kenneth Alles.

WILLIAM G. CALLOW, J. This is a review of an unpublished decision of the court of appeals reversing Mil-

waukee county circuit court Judge Michael J. Skwieraw-
ski's judgments of conviction entered following a jury
trial on the charges of transferring encumbered prop-
erty, party to a crime. The court of appeals dismissed
the state's cross-appeal on the issue of notice which is
also before us on this review.

The sequence of events leading to the defendants'
prosecution may be summarized as follows. In March of
1975, Triland, Inc., a corporate entity in the business of
developing and selling homes, advertised forty-eight
homes to be built in a subdivision in the Village of Dous-
man, Wisconsin. Triland offered to provide financing to
prospective buyers at rates of 5 to 6 percent, which was
substantially below the market value at that time. The
defendants were corporate officers of Triland. Defend-
ant Kenneth Alles was vice president and chief execu-
tive officer, and defendant Nancy Waynert was secre-
tary-treasurer.

In April of 1975, the three buyers, the Dyers, the
Moens, and the Dables, entered into contracts in which
Triland agreed to build and convey homes and to procure
mortgage financing for the buyers. Both the Moens and
Dables made a down payment at the time their contracts
were signed. The Dyers entered into an additional con-
tract with Triland to convey certain real property as a
down payment.

Triland financed the construction of the three homes
by a series of loans from National Savings & Loan Asso-
ciation of Milwaukee. On July 16, 1975, the defendants
signed a separate construction loan in the amount of
$25,600 and a mortgage securing the loan to be held by
National Savings & Loan with respect to each of the
three homes to be constructed. Under the terms of the
loan, Triland was required to make monthly interest pay-
ments of $9\frac{1}{4}$ percent over a two-year term, the principal
being due at the end of that period.

Prior to the closings, each buyer received a one-page document captioned, "Building Contract and Closing Procedures," which stated the buyers would receive a title policy "showing the property to be free and clear of all liens and encumbrances." In October of 1975 closings occurred on each of the three residences. At that time there was a $24,785.03 balance due on the construction loan financing the Dable home, and a $24,800.03 balance due on the Moen and Dyer residences. The mortgage held by National Savings & Loan, securing the Triland construction debt, remained as an encumbrance on each of the three properties.

At the closing, all three buyers testified they were provided with a warranty deed stating that Triland was conveying the home "free and clear of encumbrances except municipal and zoning ordinances, recorded easements and building restrictions, if any." Each of the warranty deeds had been signed by the defendants on October 1, 1975. The buyers testified at trial that they were not told at the closing of the existence of the mortgage held by National Savings & Loan and that they understood the only mortgage on the property was the one to Triland which they signed. Each buyer signed a note and mortgage payable to Triland, securing the loan.

Prior to the closings, Triland had requested Waukesha Title Co., Inc., to prepare a separate title insurance commitment letter regarding each of the three properties. In each instance the fifteen-page title insurance commitment letter listed the "Mortgage executed by Triland, Inc. to National Savings & Loan Association for $25,600, dated July 16, 1975," as an exception to insurance coverage. A witness from Waukesha Title testified at trial that it was likely that the title insurance commitment letter was delivered to Triland prior to each closing. The controversy before this court involves the determination of when Mrs. Dable received notice of the encumbrance on the property.

Mr. Dyer testified at trial that he was unsure when he received the title insurance commitment letter, but it may have been before the closing. Mr. Moen testified that he did receive the title insurance commitment letter at the closing, and although he examined it briefly, defendant Waynert told him, " 'Well, you won't have time to go through all of it now because there's so much wording.' " At trial defendant Waynert denied making this remark.

Mrs. Dable testified at trial that neither she nor her attorney received the title insurance commitment letter until after the closing. She testified that defendant Waynert stated at the closing that Triland had not yet received the letter from Waukesha Title. Mrs. Dable testified that her attorney, Leonard Adent, inquired at the closing if there were any encumbrances on the property and was told by Triland employee, Patrick McElligott, that there were no encumbrances on the property. Attorney Adent did not testify at trial. Defendant Waynert testified at trial that, after receiving the title commitment from Waukesha Title, she wrote on it the name and address of the Dables' attorney and asked an employee to deliver it to the Dables' attorney. She testified this occurred prior to the Dable closing. The employee she directed to deliver the letter did not testify at trial.

Mrs. Dable participated in a second closing on her home in July of 1976. The Triland construction loan was repaid as part of that transaction, and the mortgage securing that loan was satisfied. Mrs. Dable testified at trial, however, that she only learned of the mortgage held by National Savings & Loan in the summer of 1978.

Although Mr. Dyer was uncertain of the date he received the title commitment letter, he was not aware that it disclosed an encumbrance on the property. Mr. Dyer testified he first learned of the unpaid Triland construction debt and the mortgage held by National Savings &

Loan in April of 1978. On July 16, 1978, a year after the Triland construction loan went into default, Dyer repaid the construction loan and satisfied his obligation to Triland by refinancing his home through National Savings & Loan.

Although Mr. Moen received the title commitment letter at the closing, he was unaware that it provided notice of an encumbrance. Mr. Moen first became cognizant of the unpaid construction loan in May of 1978. The loan remained unpaid until January of 1979 when Midland National Bank agreed to accept placement of the Dyer and Moen financing, resulting in payment of the Moen mortgage to Triland. The proceeds from the payment of the Moen to Triland mortgage resulted in payment of the Triland construction loan to National Savings & Loan in February of 1979. At the same time, Dyer entered into a third financing transaction with Midland, satisfying his mortgage obligation to National Savings & Loan.

The defendants were tried on three separate counts (for sale of the Moen, Dyer, and Dable homes) of transferring encumbered property, party to a crime, in violation of secs. 943.25 and 939.05, Stats., 1975. The trial judge ruled that the title insurance commitment letter was, as a matter of law, notice of the encumbrance on the property. Accordingly, the issue at trial was whether the buyers had received the title insurance commitment letter at or before the closing. The Moen count was dismissed on the ground that the buyer had received the title commitment letter prior to closing which the trial judge held constituted notice of the encumbrance as a matter of law. The jury acquitted the defendants on the Dyer count and convicted on the Dable count which is the subject of this appeal.

The state cross-appealed challenging the trial court's finding, as a matter of law, that the title insurance com-

mitment letter constituted notice of the encumbrance on the property and instructing the jury to that effect. The court of appeals dismissed the cross-appeal on the ground that the state could only file a cross-appeal from a final, written order or judgment. The court of appeals reversed the defendants' convictions on the ground that there was insufficient evidence to prove the notice element of sec. 943.25(1), Stats., 1975. The court of appeals specifically held that the state failed to meet its burden of proof by failing to call Attorney Leonard Adent as a witness. That court held that Attorney Adent's testimony was essential because the Dables could have obtained notice of the encumbrance through him. The court of appeals concluded that this omission caused the state's evidence to be so lacking in probative value that no jury could reasonably have found guilt beyond a reasonable doubt.[1]

---

[1] The court of appeals concluded:

"The state's failure to call the attorney representing the Dables at the closing as a witness at trial, created a gaping hole in its proof that the defendants failed to inform the Dables of the encumbrance on the property. There is no dispute that the title commitment dated October 3, 1975, revealed the existence of the encumbrance. Patricia stated that she did not receive the commitment at the closing. However, Waynert testified that she had asked one of her employees to deliver the policy to the Dables' attorney prior to the closing.

The Dables' attorney was an active participant in the closing transaction. It is the duty of the attorney for the buyer to investigate the very problem we face here: whether there are encumbrances on the property. The attorney for the buyer is responsible for examining the title commitment to determine the status of the title to the property. He would be in the best position to answer the questions of whether the title commitment was among the closing documents and whether there was disclosure of the encumbrance. The state's failure to call the Dables' attorney as a witness renders its proof of failure to notify, the third element of the transferring of encumbered property offense, deficient. Without such testimony, the evidence was so lacking in probative value that no jury could reasonably have found guilt beyond a reasonable doubt."

We are obliged to address three issues on this appeal. The first issue is whether there was sufficient evidence for the jury to find beyond a reasonable doubt that the defendants failed to inform the Dables of an encumbrance on the property at or prior to the closing, pursuant to sec. 943.25(1), Stats., 1975. The second issue we address, which the court of appeals did not reach, is whether the record contains sufficient evidence on the element of "intent to defraud" to support the defendants' convictions. The third issue is one of procedure: whether the state's right of cross-appeal, pursuant to sec. 974.05 (2), Stats., is limited to final orders and judgments. We reverse the decision of the court of appeals and hold that the evidence in this case was sufficient to support a conclusion that the jury could have found the defendants guilty beyond a reasonable doubt on the elements of failing to give notice of the existence of an encumbrance on property being transferred and intent to defraud, pursuant to sec. 943.25(1). We further conclude that the state's cross-appeal, pursuant to sec. 974.05(2), on the issue of notice was proper and that statute does not confine the right of cross-appeal to a final judgment or order.

I.

"We test the sufficiency of the evidence leading to the conviction by the oft-stated rules as follows: This court must affirm if it finds that the jury, acting reasonably, could have found guilt beyond a reasonable doubt. The function of weighing the credibility of witnesses is exclusively in the jury's province, and *the jury verdict will be overturned only if, viewing the evidence most favorably to the state and the conviction, it is inherently or*

*patently incredible, or so lacking in probative value that no jury could have found guilt beyond a reasonable doubt."*

*Fells v. State,* 65 Wis. 2d 525, 529, 223 N.W.2d 507 (1974) (dealing with conviction of attempted first-degree murder and attempted armed robbery) (footnotes omitted) (emphasis added); *Cranmore v. State,* 85 Wis. 2d 722, 774, 271 N.W.2d 402 (Ct. App. 1978); *Gauthier v. State,* 28 Wis. 2d 412, 416, 137 N.W.2d 101 (1965) *cert. denied* 383 U.S. 916 (1966). We note that our review of sufficiency of the evidence questions is limited further by the principle that "[i]f more than one inference can be drawn from the evidence, the inference which supports the jury finding must be followed unless the testimony was incredible as a matter of law." *Murphy v. State,* 75 Wis. 2d 522, 526, 249 N.W.2d 779 (1977); *See: State v. Lunz,* 86 Wis. 2d 695, 705, 273 N.W.2d 767 (1979); *Beavers v. State,* 63 Wis. 2d 597, 609, 217 N.W. 2d 307 (1974). These principles limiting our review are grounded on the sound reasoning that the jury has the "great advantage of being present at the trial"; it can weigh and sift conflicting testimony and attribute weight to those nonverbal attributes of the witnesses which are often persuasive indicia of guilt or innocence. *See: Gauthier v. State, supra* at 416. It bears repeating that we will not substitute our judgment for that of the jury unless, under all the evidence presented, the jury *could not* have found guilt beyond a reasonable doubt. Thus, as we view it, if any possibility exists that the jury *could* have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, we will not overturn a verdict even if we believe that a jury *should* not have found guilt based on the evidence before it.

The parties agree, and the lower courts found that, pursuant to sec. 943.25(1), Stats., 1975,[2] the state bears the burden of proving four elements to the crime of transferring encumbered property. The four elements are: (1) conveyance of encumbered real property; (2) knowledge by the seller of the encumbrance; (3) failure to inform the buyer of the encumbrance; and (4) intent to defraud. The third and fourth elements of this crime are the ones at issue before us. The defendants admit that, at the time of the Dable closing, National Savings & Loan Association held a mortgage on the Dable home. It is the defendants' contention that it had always been their intention to satisfy that mortgage as soon as financing arrangements for the Dable home were made with a lender.

The common law doctrine of caveat emptor has been abrogated in this state and elsewhere, and as sec. 943.25 (1), Stats., 1975, prescribes, transferring encumbered property "without informing" the buyer of the encumbrance is a crime. The trial court concluded as a matter of law that providing a title insurance commitment letter at or prior to the time of conveyance disclosing the encumbrance satisfied the statute even with the presence of a conflicting document, in this case the warranty deed, representing the property to be free of encumbrances. To convict, under the jury instruction given, the jury had to conclude that the evidence presented in this case established that neither Mrs. Dable nor her attorney had received the title commitment letter disclosing Triland's

---

[2] Sec. 943.25(1), Stats., 1975, provides:

"943.25 **Transfer of encumbered property.** (1) Whoever, with intent to defraud, conveys real property which he knows is encumbered, without informing the grantee of the existence of the encumbrance may be fined not more than $5,000 or imprisoned not more than 3 years or both."

construction mortgage prior to or during the real estate closing. We review the evidence, in the light most favorable to the state, to ascertain whether the jury, acting reasonably, *could* have convicted the defendants based on the evidence presented on this issue at trial.

We note that the evidence presented at trial on the issue of notice came principally from defendant Waynert and Mrs. Dable. Their testimony was somewhat in conflict and weighing the credibility of both was properly a function of the jury. *Gauthier v. State,* 28 Wis. 2d at 416; *Birmingham v. State,* 228 Wis. 448, 451, 279 N.W. 15 (1938). Mrs. Dable's testimony revealed the following on the issue of notice: (1) Neither she nor her attorney received the title commitment letter prior to or at the real estate closing; (2) She asked her attorney at the closing what the term "encumbrance" meant; (3) At the closing her attorney, Leonard Adent, asked Triland employee Patrick McElligott whether there were encumbrances on the property, and he replied that there were none;[3] (4) She was shown a warranty deed at the clos-

---

[3] The trial judge admitted this testimony over objection, holding it was not hearsay under sec. 908.01(3), Stats., as it was not elicited to prove the truth of the matter asserted therein, but merely that the statement was made and its effect on Mrs. Dable. *Auseth v. Farmers Mutual Automobile Ins. Co.,* 8 Wis. 2d 627, 629, 99 N.W.2d 700 (1959); *See also: Caccitolo v. State,* 69 Wis. 2d 102, 109–110, 230 N.W.2d 139 (1975).

"It is reasoned that, if a statement is made in the presence of another person, the defendant in this case, which would ordinarily be denied by that other person if it were not true and he does not deny it, then he has foregone the opportunity to dispute the statement. The hearsay rule is designed to reject untrustworthy utterances. Since the person whose interest was damaged by the statement did not avail himself of the opportunity to refute it, it is presumably trustworthy. He has foregone the opportunity of an out-of-court disputation; and the statement is admissible, not because it is not hearsay, but because the hearsay rule, at least to an

ing, and she understood that the property was free and clear of encumbrances; (5) Defendant Waynert informed her at the closing that Triland had not yet received the title commitment letter; (6) Triland employee, Tom Alles, delivered the title commitment letter to her home approximately one week after the closing.

Defendant Waynert testified that she directed either Thomas Alles or Patrick McElligott, both Triland employees, to deliver the title commitment letter to Attorney Adent prior to the closing. The letter, introduced into evidence at trial, was dated October 3, 1975, and it had Adent's name and address written on it in defendant Waynert's handwriting.

The jury was free to weigh the credibility of both Mrs. Dable and defendant Waynert and pass on their testimony accordingly. Defendants argue and the court of appeals held that Attorney Adent was the crucial witness on the question of notice because notice to an attorney is imputed to the client. *Wauwatosa Realty Co. v. Bishop,* 6 Wis. 2d 230, 236, 94 N.W.2d 562 (1959). Accordingly, defendants argue that failure to call Attorney Adent resulted in the state's failure to prove its case on the element of notice.

We would point out that there is no best available evidence rule or source with respect to whose testimony should be elicited to prove a fact in issue. While Attorney Adent may have been a better source than Mrs. Dable to testify whether he received the title commitment letter prior to or during the real estate closing, we do not require the best or most probative evidence to

extent consistent with judicial policy of ascertaining trustworthiness, has been satisfied." 69 Wis. 2d at 110.

While the defendants do not bear the burden of proof, we note that the defense produced no witnesses to dispute Mrs. Dable's account of the McElligott conversation.

prove a fact in issue. In the instant case, we have the testimony of Mrs. Dable on the one hand stating that neither she nor her attorney received the title commitment letter at or before the closing. Defendant Waynert never testified that she or anyone else actually told Mrs. Dable or Attorney Adent that a construction mortgage existed as an encumbrance on the property. All defendant Waynert testified to at trial was that she directed another Triland employee to deliver the letter to Attorney Adent prior to closing. The defense never introduced any testimony to establish that the letter had, in fact, been delivered to Adent. The presence of the letter in the record can be explained by Mrs. Dable's testimony that she received it a week after the closing when it was delivered to her home by Tom Alles. Defendant Waynert testified at trial, in response to being asked whether she told Mrs. Dable or Attorney Adent that the title commitment letter had not yet arrived at the closing, that she could not recall having made that statement. Under the facts and circumstances as we view them, the state's evidence on the element of notice, while arguably not the best evidence available, was relevant, probative evidence that the jury weighed against the evidence of notice offered by the defense.[4] The jury considered the credi-

---

[4] We note that sec. 904.01, Stats., establishes the definition of relevant evidence: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

In *Oseman v. State*, 32 Wis. 2d 523, 526, 145 N.W.2d 766 (1966), we concluded: " 'Any evidence that assists in getting at the truth of the issue is relevant.' " *Id.* Similarly, in *Zdiarstek v. State*, 53 Wis. 2d 420, 428, 192 N.W.2d 833 (1972), we quoted *Oseman* stating: " ' "[t]he criterion of relevancy is whether or not the evidence adduced tends to cast any light upon the subject of the inquiry." ' " *Id.* Thus, while the evidence introduced at trial may not have been the most probative evidence available, it was nevertheless relevant.

bility of the witnesses, examined the evidence, and found the defendants guilty. We cannot conclude, viewing the evidence most favorably to the state and the convictions, that the evidence was so lacking in probative value that no jury could have found guilt beyond a reasonable doubt. Therefore, we reverse the holding of the court of appeals on this issue.

Because of our finding of sufficient evidence to support the judgments of conviction, we are obliged to examine the element of intent to defraud. The court of appeals found it unnecessary to address this element because it found the evidence lacking on the issue of notice and, accordingly, reversed defendants' convictions. The phrase "intent to defraud" varies with the context in which it is used. *See: United States v. Lepowitch,* 318 U.S. 702, 704, (1943) (intent to defraud does "not require more than that the defendants have, by artifice and deceit, sought to cause the deceived person to follow some course he would not have pursued but for the deceitful conduct") ; *United States v. Cohn,* 270 U.S. 339, 346–47, (1926) (defrauding should be construed "as relating to the fraudulent causing of pecuniary or property loss"). The jury was properly instructed in the case at bar. In this crime, " 'intent to defraud' is used in the sense of an intent to cause pecuniary loss, either to the person whose encumbrance or security interest is endangered or defeated, or to the innocent purchaser." Baldwin, *Criminal Misappropriations in Wisconsin— Part II,* 44 Marq. L. Rev. 430, 436 (1961) ; Wis. Legislative Council, 5 Judiciary Committee Report on The Criminal Code (Bill No. 100, A) sec. 343.25 at 120 (1953).

The jury may infer intent to defraud from the defendant's overt acts and from inferences fairly deducible from the circumstances. On review of the evidence, we

conclude that the jury acting reasonably could have found intent to defraud beyond a reasonable doubt.

## II.

The remaining issue before us concerns the propriety of the state's cross-appeal brought pursuant to sec. 974.05 (2), Stats. The state seeks review of the trial court's instruction to the jury on the element of notice. The court of appeals refused to address the state's cross-appeal, holding that it was improperly brought as only final orders and judgments are appealable as of right.

The state's basic contention is that, because explicit misrepresentations of clear title were allegedly made at the time of the closing, the jury should have been directed to consider the totality of defendants' conduct to establish whether the evidence supported an intentional failure to inform the buyer of an encumbrance on the property, pursuant to sec. 943.25(1), Stats., 1975. The trial court instructed the jury in pertinent part as follows:

"Under Wisconsin law, the delivery (to a grantee, or the grantee's attorney) of a title commitment letter which lists the encumbrance before or at the time of the real estate closing, constitutes disclosure of the encumbrance."

Because the defendants were found guilty on the basis of this instruction, it cannot be said that the state was prejudiced in this particular action, although it is the state's position that the instruction places an insufficient burden on the defendants to discharge their statutory obligation to disclose encumbrances. Because the state was not prejudiced, we do not in this opinion reach the merits of whether the instruction correctly imposed upon the defendants the full statutory burden to disclose. In the context of this case, we have found sufficient evi-

dence of guilt under an instruction which was not preju-
dicial to either the state or the defendants. The more
important and recurring question is whether, under the
procedural circumstances of this case, the allegedly er-
roneous instruction was properly posed for appellate re-
view.

The court of appeals correctly characterized the trial
court's ruling on the instruction as a nonfinal or inter-
locutory ruling. It was in error, however, when it held
that a respondent may only seek review of final orders
and judgments. Clearly, the order or ruling directing the
jury instruction was not final. It did not dispose of the
entire matter in litigation as to one or more of the par-
ties, and additionally, it had not been entered in the
clerk's office prior to the taking of the appeal. *See:*
Secs. 808.03, 806.06(1)(b), and 807.11(2), Stats. The
record reveals the trial court's written order encompass-
ing the court's ruling on the challenged jury instruction
was entered several days after the cross-appeal was
taken.

The state requested review of the allegedly erroneous
instruction pursuant to sec. 974.05(2), Stats., which pro-
vides:

"(2) If the defendant appeals or prosecutes a writ of
error, the state may move to review rulings of which it
complains, as provided by s. 809.10(2)(b)."

The court of appeals appeared to recognize that sec.
974.05(2), Stats., excluding the final clause of that stat-
ute, gave it the unqualified jurisdiction to review "rul-
ings," including the jury instruction in the instant case.
The final clause of sec. 974.05(2), as the court of appeals
noted, cross-references to sec. (Rule) 809.10(2)(b),
Stats., which provides:

"(b) *Cross-appeal.* A respondent who seeks a modi-
fication of the judgment or order appealed from or of

another judgment or order entered in the same action or proceeding shall file a notice of cross-appeal within the period established by law for the filing of a notice of appeal, or 30 days after the filing of a notice of appeal, whichever is later. A cross-appellant has the same rights and obligations as an appellant under ch. 809."

We note that sec. (Rule) 809.10(2)(b), Stats., does not distinguish matters appealable as of right from those appealable at the appellate court's discretion. These standards are established by sec. 808.03, Stats.[5] Chapter 809 encompasses *rules* of procedure. Sec. 809.10(2)(b) deals with cross-appeals which, by their very nature, are dependent upon a properly filed appeal. Consequently, this cross-appeal section deals with how a cross-appeal is accomplished rather than the issue of appealability. Nevertheless, when sec. 809.10(2)(b) refers to judgments and orders, it appears clear that final orders are included by virtue of the fact that they are not excluded.

---

[5] Sec. 808.03, Stats., provides:

"**808.03 Appeals to the court of appeals.** (1) APPEALS AS OF RIGHT. A final judgment or a final order of a circuit court may be appealed as a matter of right to the court of appeals unless otherwise expressly provided by law. A final judgment or final order is a judgment or order entered in accordance with s. 806.06 (1)(b) or 807.11(2) or a disposition recorded in docket entries in traffic regulation cases and municipal ordinance violation cases prosecuted in circuit court which disposes of the entire matter in litigation as to one or more of the parties, whether rendered in an action or special proceeding.

"(2) APPEALS BY PERMISSION. A judgment or order not appealable as a matter of right under sub. (1) may be appealed to the court of appeals in advance of a final judgment or order upon leave granted by the court if it determines that an appeal will:

"(a) Materially advance the termination of the litigation or clarify further proceedings in the litigation;

"(b) Protect the petitioner from substantial or irreparable injury; or

"(c) Clarify an issue of general importance in the administration of justice."

Certainly, the judgment or order appealed from by the appellant as of right must be a final order or judgment. Sec. 809.10(2)(b) does not specifically distinguish between judgments and orders which may have different degrees of finality. An appellant is entitled to review as of right only of a final order or judgment. Arguably, because sec. 809.10(2)(b) declares that cross-appellants have the same rights and obligations as appellants under Chapter 809, cross-appellants are limited to a review of final judgments or orders. We determine, however, that such a construction would be erroneous in light of the purpose for which cross-appeals were contemplated.

A brief historical inquiry sheds light upon this issue. The Judicial Council Committee's Note regarding the 1978 revisions to sec. (Rule) 809.10(2)(b), Stats., provides in part: "Notices of review are abolished. Under former s. 817.12, is was very difficult to ascertain when a notice of review or cross-appeal was appropriate. Requiring a notice of cross-appeal in each instance eliminates this confusion." *See: Edlin v. Soderstrom,* 83 Wis. 2d 58, 66, 264 N.W.2d 275 (1978). That section is amplified in R. Martineau and R. Malmgren, *Wisconsin Appellate Practice,* sec. 602 B at 41 (1978):

"The purpose of Rule 809.10(2)(b) is to correct problems created by former Section 817.12, which attempted to provide for the respondent to obtain review of some adverse determinations by a notice of review and others by cross-appeal. This distinction was very difficult to understand and on occasion resulted in the respondent being told that, due to filing a notice of review rather than a cross-appeal, the court would not consider his claim. Now the respondent must cross-appeal if he wants to complain of any action of the trial court."

Because Martineau was the principal author of the rules and Malmgren was secretary of the Judicial Council at the time the rules were considered, we accept their ex-

planation as persuasive authority regarding situations where the respondent seeks to have the appellate court consider a ruling on a matter which, before the promulgation of the new rules, would be required to be brought to the reviewing court on a notice of review. Formerly, any nonfinal order or ruling was brought to the court by notice of review. Now this is accomplished by taking a cross-appeal.

Both the official and unofficial commentaries make it clear that the notice of review has not been substantively abolished, but can be procedurally accomplished by the respondent utilizing a cross-appeal. Under the old procedure the court did not decline to consider a notice of review because it was erroneously brought as a cross-appeal, but it would decline to consider a cross-appeal if it were erroneously brought as a notice of review. Under the new procedure both must be brought as a cross-appeal. Although the substance of the old notice of review remains, it must be posed procedurally in the posture of a cross-appeal.

It is clear that orders which were brought before the court on notice of review did not need to be final orders. The old rule, sec. 817.12(1), Stats., 1975, provided:

"A respondent adverse to the appellant upon the latter's appeal may have a review of any rulings prejudicial to him by serving upon the appellant at any time before the case is set for hearing in the supreme court a notice stating in what respect he asks for a reversal or modification of the judgment or order or portion thereof appealed from."

Under the former rule—that the respondent by notice (notice of review) could have a review of "any rulings prejudicial to him"—there was no requirement that the ruling be final. *See: Hutterli v. State Conservation*

*Comm.,* 34 Wis. 2d 252, 255–56, 148 N.W.2d 849 (1967) ; *Tom Welch Accounting Service v. Walby,* 29 Wis. 2d 123, 131, 138 N.W.2d 139 (1965) ; *Karis v. Kroger Co.,* 26 Wis. 2d 277, 280, 132 N.W.2d 595 (1965) ; *Wisconsin Creameries, Inc. v. Johnson,* 208 Wis. 444, 448, 243 N.W. 498 (1932). To the extent the pre-1978 notice of review was subsumed in the provisions of sec. (Rule) .809.10 (2) (b), Stats., there is no requirement that the matter the respondent seeks to review be final. Once the appellant has been granted an appeal, either on the basis of right or in the court's discretion, the respondent who was formerly required to bring a notice of review may now utilize the cross-appeal procedure and have nonfinal orders reviewed.

This analysis is completely consistent with sec. 974.05 (2), Stats., which provides that the state may move to review *rulings* of which it complains if the defendant appeals. There is no requirement that rulings be final. Martineau and Malmgren, *supra* at 182, referring specifically to criminal cases, make it clear that it is the *practice* of utilizing the notice of review that is abolished, not the *remedy* which a notice of review afforded a respondent.

Had the state sought the equivalent of the old notice of review by its cross-appeal, it would have been entitled to such review, although the ruling complained of was not a final order. We conclude, however, that what the state sought in this instance was not the equivalent of the notice of review formerly provided for in sec. 817.12 (1), Stats., 1975; rather, it sought to employ pre-1978 procedure set forth in sec. 817.12(2). "A respondent may *without serving the notice of review* mentioned in [sec. 817.12(1), Stats., 1975] have a review of any error, the correction of which would merely support the judgment or order appealed from." (Emphasis added.) Under the sec. 817.12(1) notice of review procedure, a respondent

seeks a reversal or modification of the judgment or order appealed from.

A typical notice of review situation was posed in *Karis v. Kroger Co., supra,* where the respondent claimed that certain damages were omitted from the verdict, and, therefore, he was required to file a notice of review to modify the judgment to include the omitted damages. That is not the type of relief the state seeks in the instant case. The state was successful in its attempt at trial to secure a judgment of conviction. It is not asking that this judgment be modified or reversed. Hence, it does not seek the equivalent of the remedy formerly afforded by notice of review. Rather, it seeks the remedy afforded to it under the pre-1978 rules by sec. 817.12(2), Stats., 1975.

The state in this case seeks to have the instruction corrected as a matter of law because it is its belief that a proper instruction—one that would have required the jury to consider the totality of the circumstances under which notice of encumbrance was given or not given by the defendants—would lend additional support to the judgment of conviction. It does not seek the remedy afforded under the old notice of review, the modification or reversal of the order.

Under the pre-1978 rules, all that was required by sec. 817.12(2), Stats., 1975, where the respondent sought additional support for the judgment or order appealed, was that the respondent merely raise the issue in its brief without serving notice of review or filing a cross-appeal. In the instant case we are dealing with a problem which was controlled by sec. 817.12(2), Stats., 1975.

Sec. 817.12(2), Stats., 1975, which we have previously set forth, was repealed by the statutory revisions which followed the constitutional court reorganization. The

question before us is whether this procedure—of merely raising an issue in the briefs when all that is sought is the raising of an error which, if corrected, would sustain the judgment—continues to be appropriate in the absence of a statute. We conclude that it is; that such a claim of error requires neither a notice under sec. 974.05(2), Stats., nor a cross-appeal. All that is required of the respondent is that it raise the issue in its brief. *See: Edlin v. Soderstrom,* 83 Wis. 2d at 66.

A review of Wisconsin cases demonstrates that, prior to the passage of the statutes in 1915 (sec. 3049a, Stats., 1915), appellate rules adopted in 1945 (245 Wis. x), and rules adopted in 1950 (255 Wis. vi), which composed the substance of sec. 817.12, Stats., 1975, a respondent was entitled by the common law to have the review provided in sec. 817.12(2) without the necessity of any pleading whatsoever.[6] Hence, even in the absence of the repealed

---

[6] Sec. 817.12, Stats., 1975, in its entirety provided:

"**817.12 All parties bound by appeal; additional parties; review on behalf of respondent.** (1) A respondent adverse to the appellant upon the latter's appeal may have a review of any rulings prejudicial to him by serving upon the appellant at any time before the case is set for hearing in the supreme court a notice stating in what respect he asks for a reversal or modification of the judgment or order or portion thereof appealed from.

"(2) A respondent may without serving the notice of review mentioned in subsection (1) have a review of any error, the correction of which would merely support the judgment or order appealed from.

"(3) If a respondent who is not adverse to the appellant on his appeal fails to appeal within 30 days after service upon him of notice of appeal or within the extended time therefor allowed by the trial court for cause shown and within the time allowed for appeal by the statute, he thereby waives his right of appeal.

"(4) When any respondent desires to review an order, judgment or portion thereof not appealed from, he shall within 30 days after service on him of notice of appeal take and perfect his appeal or be deemed to have waived his right so to appeal.

"(5) If a party required by subsection (3) or (4) to take an appeal to save his rights does appeal, he shall be subject in all

provision, sec. 817.12(2), Stats., 1975, when the error complained of, if corrected, would sustain the judgment, order, or portion thereof appealed from, the respondent by common law is entitled to have review of such claimed error by raising the issue in its brief without service of a notice of review or notice of cross-appeal. The reason for this is the accepted appellate court rationale that a respondent's judgment or verdict will not be overturned where the record reveals that the trial court's decision was right, although for the wrong reason. An appellate court, consistent with that percept, has the power, once an appealable order is within its jurisdiction, to examine all rulings to determine whether they are erroneous and, if corrected, whether they would sustain the judgment or order which was in fact entered.

The court stated in *Slaughter v. Bernards*, 97 Wis. 184, 196, 72 N.W. 977 (1897) : "We are not bound on this appeal by the findings and conclusions unfavorable to respondent, but may properly review the whole case and affirm the judgment though errors be found, if, notwithstanding, the judgment be right on the pleadings and the evidence."

In *Haswell v. Reuter*, 171 Wis. 228, 231, 177 N.W. 8 (1920), this court pointed out that: "[I]t is immaterial what ground the trial court assigned as the reason for his ruling if it be in fact correct."

In *Falkenstern v. Greenfield*, 145 Wis. 232, 130 N.W. 61 (1911), the court concluded that, although the appellant appeared correct in his contention that the verdict could not be sustained on the ground relied upon by the

respects to the same requirements that he would be if he were the original appellant and the rights of those served with his notice of appeal, to review rulings of the trial court by which they consider themselves aggrieved, shall be determined as though he were the original appellant.

"(6) The supreme court may order additional parties brought in upon their application or on that of any party to the appeal."

trial court, nevertheless it would look to facts in the record "in favor of respondent which [seem] to be insurmountable." *Id.* at 237.

This court, at common law prior to the passage of any statutes or rules contained in sec. 817.12, Stats., 1975, concluded that by virtue of having an appealable matter before it, the court had jurisdiction to correct rulings or determinations which, when corrected, would support the trial court judgment. It had the authority, without any special pleading, to determine whether the judgment was supported by the record and could affirm the trial court's judgment even if it had reached its result for the wrong reason.

Thus, even a brief review of our procedural history prior to the adoption by statute and rule of what eventually became sec. 817.12(2), Stats., 1975, shows that no special pleading was required, and no special notice needed to be given to appellant for the court to have jurisdiction to correct errors where such correction supported the judgment appealed from. We conclude that, even though we find no analogue to sec. 817.12(2) in the current statutes, it would have been sufficient to insure the review of the allegedly erroneous jury instruction for the state to merely call the alleged error to the attention of the court in its brief. Statutory authority is unnecessary.[7]

---

[7] We note that sec. (Rule) 809.10, Stats., provides:

"809.10 **Rule (Initiating the appeal).**

" . . .

"(4) MATTERS REVIEWABLE. An appeal from a final judgment or final order brings before the court all prior nonfinal judgments, orders and rulings adverse to the appellant and favorable to the respondent made in the action or proceeding not previously appealed and ruled upon."

Ordinarily this subsection would support the state's position and the thesis of this opinion—that when the judgment is within the appellate court's jurisdiction, all rulings, orders, etc., may be examined. However, the subsection taken literally applies only to

Here the respondent, apparently concluding that what it sought to have considered was in substance a matter formerly brought by a notice of review, chose to file a cross-appeal as is required by the rule. The state, however, did more than was required. Although the notice of cross-appeal was an acceptable way to bring the erroneous instruction before the court, a notice raising the issue in the briefs would have been sufficient.

Although we have referred to portions of the Martineau and Malmgren text with approval, we believe the authors' analysis goes too far when it is stated in sec. 602 B at 41: "Now the respondent must cross-appeal if he wants to complain of any action of the trial court." We find no intimation in the statutes or rules that a respondent must now cross-appeal where it wishes only

rulings *adverse* to the appellant. Here the state complains of a ruling adverse to it—the respondent. Also, this subsection should be compared to the provision of sec. 817.34, Stats., 1975:

"817.34 **Appeals, intermediate orders may be reviewed.** Upon an appeal from a judgment, and upon a writ of error, the supreme court may review *any intermediate order* which involves the merits and necessarily affects the judgment, appearing upon the record." (Emphasis added.)

We conclude that the history of Wisconsin decisional law requires the conclusion that this section, too, remains in effect despite its omission from the 1979–80 revision of the Rules of Appellate Procedure. *See:* Judicial Council Committee's Note, 1978, sec. 809.10 (4), Stats.

"The provision of former s. 817.34 that an appeal from a final judgment brings before the court for review all of the prior orders entered in the case is continued. . . . This section is also limited to those orders made in favor of the named respondents to prevent the possibility of the court reviewing an order in favor of a person not a party to the appeal."

It is clear that the purpose of the limitation on former sec. 817.34, Stats., 1975, is not applicable to the instant case, for the respondent state is a party to the appeal. Thus the fundamental rule of appellate procedure of sec. 817.34 remains intact, and where the party is joined in the appeal, all intermediate orders may be reviewed.

to point out errors in nonfinal rulings which, if corrected, would give support to the judgment. *See:* n. 7, *supra.*

Perhaps the most important consideration in our approach to this problem is, however, the general philosophy of the statutes governing appeals and writs of error in Chapter 808, Stats., and the philosophy of the amplifying rules in Chapter 809, Stats. The commentaries of the Judicial Council demonstrate, with respect to Chapter 808 (statutes) and Chapter 809 (rules), that they are based upon the American Bar Association Commission on Standards of Judicial Administration, *Standards Relating to Appellate Courts,* sec. 3.12. The latter provision is grounded on the belief that appellate review should ordinarily be available only following the entry of a final judgment. The ABA standards make it clear that the purpose of the final-judgment rule is to avoid piecemeal appeals which delay and interfere with trial court proceedings and destroy the integrity of trial court judgments. As the commentaries demonstrate, this is the overarching reason for ordinarily not allowing a review of nonfinal judgments. In the instant case, however, although it is conceded that the ruling on the complained-of jury instruction is not a final judgment, its review is sought after a final judgment has been entered and, in fact, has been appealed. None of the compelling reasons which lie behind sec. 808.03 (1), Stats., are relevant. Neither the philosophy of Chapter 808, which leads to the final-judgment rule, nor any express provision of the rules leads to a reasonable conclusion that nonfinal orders ought not be reviewable and correctable when trial court litigation is at an end and the final order or judgment is within the jurisdiction of the appellate court.

Accordingly, we conclude that the state's claim of error with respect to the allegedly erroneous jury instruction was within the appellate jurisdiction of the court of appeals, and the court of appeals erred in dismissing the state's cross-appeal.

We need not in the instant case, however, go further to explore whether such instruction by the trial court was incorrect. Clearly, in this case it was not prejudicial with respect to the outcome of the case, for we have found that the evidence, properly introduced into the record and relied upon by the jury, sufficiently proved that the defendants failed to give *any* notice of the fact that the real estate sought to be transferred was encumbered.

We, therefore, sustain the jury's verdict and the subsequent judgment of conviction. Although the defendants raise numerous other issues which were not dealt with by the court of appeals, we conclude that these issues are lacking in merit with respect to this review. Accordingly, we do not consider them.

*By the Court.*—The decision of the court of appeals is reversed.