STATE of Wisconsin, Plaintiff-Respondent,

v.

Newell M. ALLBAUGH, Defendant-Appellant.

Court of Appeals

*No. 88–0835–CR. Submitted on briefs December 8, 1988.—
Decided January 19, 1989.*

(Also reported in 436 N.W.2d 898.)

For the defendant-appellant the cause was submitted on the briefs of *Kenneth P. Casey,* assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *James M. Freimuth,* assistant attorney general.

Before Gartzke, P.J., Dykman and Eich, JJ.

EICH, J.   Newell M. Allbaugh appeals his conviction for possession of controlled substances with intent to deliver, in violation of sec. 161.41(lm), Stats. The issue is whether the evidence was sufficient to convict—specifically, whether there was adequate evidence to support a jury finding that Allbaugh "possessed" the substances within the meaning of the statute. We conclude that the evidence was sufficient and affirm the conviction.

The basic facts are not in dispute. Allbaugh's father telephoned the police and informed them that he had found what he suspected to be marijuana in the house on his farm where his son Newell and another man, Michael Nevins, lived. Eventually, a search warrant was obtained and police found approximately twenty-two pounds of marijuana in various rooms in the house. Allbaugh was convicted and sentenced after a jury found him guilty of possession of the marijuana with intent to deliver. Other facts will be referred to below.

An appellant attacking a jury verdict has a heavy burden, for the rules governing our review strongly favor

the verdict. The test is not whether we are convinced of the defendant's guilt beyond a reasonable doubt, *State v. Burkman,* 96 Wis. 2d 630, 643, 292 N.W.2d 641, 647 (1980); rather,

> [w]e test the sufficiency of the evidence leading to the conviction by the [following] oft-stated rules...: [We] must affirm if [we] find[ ] that the jury, acting reasonably, could have found guilt beyond a reasonable doubt. The function of weighing the credibility of witnesses is exclusively in the jury's province, and the jury verdict will be overturned only if, viewing the evidence most favorably to the state and the conviction, it is inherently or patently incredible, or so lacking in probative value that no jury could have found guilt beyond a reasonable doubt. [Emphasis omitted.]

*State v. Alles,* 106 Wis. 2d 368, 376–77, 316 N.W.2d 378, 382 (1982), quoting *Fells v. State,* 65 Wis. 2d 525, 529, 223 N.W.2d 507, 510 (1974).

Our review is further limited by the principle that "if more than one inference can be drawn from the evidence, the inference which supports the jury finding must be followed unless the testimony was incredible as a matter of law." *Alles,* 106 Wis. 2d at 377, 316 N.W.2d at 382, quoting *Murphy v. State,* 75 Wis. 2d 522, 526, 249 N.W.2d 779, 781 (1977). Such strict rules are grounded, in part at least, on the "sound reasoning that the jury has the 'great advantage of being present at the trial'" and is thus in the best position to "weigh and sift conflicting testimony and attribute weight to those nonverbal attributes of the witnesses which are often persuasive indicia of guilt or innocence." *Alles,* 106 Wis. 2d at 377, 316 N.W.2d at 382.

The evidence against Allbaugh was largely circumstantial, and he correctly points out that in such cases the circumstantial evidence "must ... be sufficiently strong to exclude every reasonable theory of innocence ...." *Stewart v. State,* 83 Wis. 2d 185, 192, 265 N.W.2d 489, 492 (1978), quoting *State v. Shaw,* 58 Wis. 2d 25, 29, 205 N.W.2d 132, 134 (1973). This does not mean, however, that if *any* of the evidence adduced at trial suggests innocence, the jury is barred from returning a verdict of guilt; for it is the jury's function to decide which evidence is worthy of belief and which is not, and to resolve any conflicts in the evidence. *State v. Wyss,* 124 Wis. 2d 681, 693, 370 N.W.2d 745, 751 (1985). The jury may reject evidence suggestive of innocence in favor of that suggestive of guilt. Thus, the rule that circumstantial evidence must exclude every reasonable theory of innocence "'refers to ... evidence which the jury could have believed and relied upon to support its verdict.'" *Id.,* quoting *Peters v. State,* 70 Wis. 2d 22, 34, 233 N.W.2d 420, 427 (1975).

Indeed, it has long been recognized that circumstantial evidence may be stronger and more satisfying than direct evidence in some cases. *Ball v. State,* 57 Wis. 2d 653, 666, 205 N.W.2d 353, 359 (1973). And the standard by which we review the verdict is the same in a case grounded on circumstantial evidence as it is in a case based on direct evidence. *Peters,* 70 Wis. 2d at 33–34, 233 N.W.2d at 426. Finally,

> [i]t bears repeating that we will not substitute our judgment for that of the jury unless, under all the evidence presented, the jury *could not* have found guilt beyond a reasonable doubt. Thus ... if any possibility exists that the jury *could* have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, we will not overturn

a verdict even if we believe that a jury *should* not have found guilt based on the evidence before it. *Alles,* 106 Wis. 2d at 377, 316 N.W.2d at 382 [emphasis in original].

The state presented its case against Allbaugh through the testimony of two police officers, Detective Dale Meyer and Deputy Sheriff Paul Hefty. Meyer testified that Allbaugh's father told him he had found "a lot of what he thought to be marijuana in his son, Newell Jr.'s house, on his farm." When Allbaugh's father gave Meyer some of the suspected marijuana and pointed out where he had seen it in the house, Meyer requested a search warrant. While he was waiting at the house for the warrant to be delivered, Allbaugh and Nevins, together with Nevins's young son (who was living in the house with him) and two women, drove up in a car and approached the house carrying bags of groceries. According to Meyer, Allbaugh said that he wanted to go into the house, but the police informed him they were waiting for a search warrant and no one was being allowed inside. At that point, Allbaugh told Meyer he had some "chores" to do, climbed on a tractor and started to drive off. Shortly thereafter, other officers arrived with the warrant and the police began their search of the house.

The house had two floors. On the first floor were a kitchen, dining room, living room and two bedrooms. One of the bedrooms contained several child's things and was identified as Nevins's son's room. Another bedroom on the first floor was identified by police as Allbaugh's after they found his checkbook in a dresser drawer in the room. There were two bedrooms upstairs; one was unoccupied and the other was identified as Nevins's.

Hefty testified that the officers found approximately nineteen pounds of marijuana in the first-floor "child's" bedroom. Some of the marijuana was hanging to dry in the closet, nearly filling it, and the rest was spread out to dry all over the bed and the floor. A "triple beam balance scale" was found on the dresser, together with several marijuana leaves. The police also found a cake pan full of marijuana drying on the dining room table, and "loose" marijuana and marijuana seeds, together with bagged marijuana and the remains of marijuana cigarettes, "laying around" in the living room. Next to a pile of seeds, they found a book entitled *Marijuana Botany.* Police saw no marijuana in the room identified as Allbaugh's, although they found a book entitled *Psychedelic Chemistry* in the dresser. On the second floor, officers found approximately two and one-half pounds of drying marijuana covering the bed in the unoccupied room.

Hefty testified that none of the rooms in the house were locked, and all were accessible to anyone in the house. He also stated that anyone entering the house going to the room identified as Allbaugh's could see into the dining room, kitchen and living room. He noted a smell of "drying plants" through the house, which was stronger in the rooms in which the marijuana was found.

■

As we have said, Allbaugh's primary challenge to the evidence is that it was insufficient to establish that he "possessed" the marijuana found in the house. We agree with Allbaugh that more than mere proximity to the drugs must be shown in order to support a finding of possession. *United States v. Batimana,* 623 F.2d 1366, 1369 (9th Cir.), *cert. denied,* 449 U.S. 1038 (1980).

But we disagree with his assertion that nothing more was shown here.

We begin by noting that courts in other jurisdictions have indicated that among the "incriminating" facts which can "buttress" the inference of knowing possession from joint occupancy of premises in which the drugs are found are: (1) the defendant's "access to ... area[s] in which drugs are found," *State v. Brickley,* 521 S.W.2d 16, 17 (Mo. Ct. App. 1975); (2) whether the drugs are in "plain view," *Carnes v. State,* 480 N.E.2d 581, 586 (Ind. Ct. App. 1985); and (3) the presence of items used in the manufacture or packaging of drugs. *Id.* In this case, Allbaugh had access to all areas of the house in which drugs were found. Indeed, even the "common" areas, such as the living and dining rooms, had loose, bagged and drying marijuana spread about in plain view; and a triple beam balance scale was found in a room containing nineteen pounds of drying marijuana.

In *Ritacca v. Kenosha County Court,* 91 Wis. 2d 72, 82, 280 N.W.2d 751, 756 (1979), the Wisconsin Supreme Court recognized similar principles when it stated that

> [t]o be found guilty of possessing a controlled substance, physical possession is not necessary; it is enough if the defendant has constructive possession of the ... substance or is "'within such juxtaposition'" to the substance such that he [or she] might be said to possess it. [Citation omitted.]

The Wisconsin Criminal Jury Instructions Committee argues against use of the term "constructive possession" because, in the committee's view, the term implies something other than "actual" or "real" possession. The committee feels that the concept should be

viewed not as "constructive possession," but rather as "a description of circumstances that are sufficient to support an inference that the person exercised control over, or intended to possess, the item in question." Wis J I—Criminal 920, Comment (1987). We agree, and so view "constructive possession" as that term is used in cases in this and other jurisdictions.

The pattern instruction, Wis J I—Criminal 920, expresses the concept in the following language: "An item is ... in a person's possession if it is in an area over which the person has control and the person intends to exercise control over the item." (Footnote omitted.) This is consistent with the supreme court's statement in *Schmidt v. State,* 77 Wis. 2d 370, 379, 253 N.W.2d 204, 208 (1977), that "[p]ossession of an illicit drug may be imputed when the contraband is found in a place immediately accessible to the accused and subject to his [or her] exclusive or joint dominion and control, provided that the accused has knowledge of the presence of the drug."

In this case, Allbaugh had been staying at the house long enough to have an identifiable room, and, in fact, was apprehended by police when he returned to the house with a load of groceries. He had been there long enough to feel comfortable taking and driving a tractor for the purpose of doing "chores" in the area of the house. The marijuana plants drying on the dining room table, and the "loose" marijuana, bagged marijuana, marijuana seeds and cigarettes scattered around the living room would have been visible to him as he entered the house and proceeded to his "room." The child's room was on the same floor as Allbaugh's. It was unlocked and accessible, and the entire bed and floor were covered with marijuana, with more—totaling all in all some nineteen pounds—hanging in the open closet.

Also in plain view on top of the dresser in the child's room, police found a balance scale and loose marijuana leaves. In a second-floor bedroom, also open and accessible to anyone in the house, nearly three more pounds of marijuana were spread on the bed to dry. The entire house smelled of drying plants. A book about marijuana botany was lying on the living room floor next to a pile of marijuana seeds, and another drug-related book, *Psychedelic Chemistry,* was found in the same dresser from which the police recovered Allbaugh's checkbook.

Given these facts, the jury could well infer that Allbaugh not only knew of the presence and nature of the plants and leaves that filled much of the house, but also that the substances were subject to the joint "dominion and control" of Allbaugh and his house-mate, Nevins. As for the hypothesis that Allbaugh knew nothing of the presence or nature of the substances, the jury could, on this record, reject that hypothesis as not worthy of belief. In this respect we agree with the reasoning of the Florida Supreme Court in a similar case, *Brown v. State,* 428 So. 2d 250, 252 (Fla.), *cert. denied,* 463 U.S. 1209 (1983):

> [Defendant] claims that he could be convicted of constructive possession on the instant facts only if the jury impermissibly piled inference upon inference. We do not find, however, that the jury would have to have drawn an impermissible inference. In the instant case the knowledge element is met because the contraband was in plain view in common areas throughout the house. The dominion and control element is met because [defendant], as resident owner of his home, had control over the common areas. Therefore, the elements of knowl-

815

edge and control have been satisfied, and, as the district court found, the facts presented at trial were sufficient to create a jury question as to constructive possession. Given the evidence presented, the jury could easily have rejected every reasonable hypothesis of innocence. [Footnote omitted.]

*By the Court.*—Judgment affirmed.