**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**June 9, 2020**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal Nos.** **2018AP2155-CR**
**2018AP2156-CR**
**STATE OF WISCONSIN**

Cir. Ct. Nos. **2015CF5443**
**2017CF1064**

**IN COURT OF APPEALS**
**DISTRICT I**

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

JAMIE L. NICOLAI,

DEFENDANT-APPELLANT.

APPEALS from judgments of the circuit court for Milwaukee County: PEDRO COLON, Judge. *Affirmed.*

Before Brash, P.J., Donald and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Jamie L. Nicolai, *pro se*, appeals from judgments of conviction, following a jury trial, of one count of second-degree recklessly endangering safety, one count of substantial battery intending bodily harm with the use of a dangerous weapon, one count of disorderly conduct, and one count of felony bail jumping.  We affirm.

## BACKGROUND

¶2     On December 12, 2015, Nicolai was charged with one count of second-degree recklessly endangering safety and one count of substantial battery intending bodily harm with the use of a dangerous weapon.  According to the criminal complaint, on December 9, 2015, B.P. called 911 to report that Nicolai was chasing her with a vehicle and trying to run her over.  During the course of the call, B.P. stated that Nicolai exited the vehicle and was stabbing her.  B.P. reported that Nicolai then fled.  Police were dispatched to the scene where they found an injured B.P., who was then transported to a local hospital.  The complaint further states that B.P. was pregnant and that the father of her child, Mario Walls, was also the father of Nicolai's child.

¶3     A second criminal complaint was issued on March 2, 2017, charging Nicolai with one count of disorderly conduct and one count of felony bail jumping.  According to the complaint, following a court proceeding in the initial case, Nicolai yelled threats at the victim and yelled profanities at the deputies that tried to calm her.

¶4     The matters proceeded to trial where multiple witnesses testified. B.P. testified that on the night of December 9, 2015, she was out with her best friend and en route to her friend's house when she came into contact with Walls. B.P. stated that she had recently found out she was pregnant with Walls's child

2

and the two had been arguing all day. Walls asked B.P. to get into his car and he drove them to his mother's house, where Walls parked in a back alley. The two continued to argue. When B.P. exited the vehicle, she saw a minivan traveling at a high rate of speed down the alley in her direction. B.P. testified that she thought the driver of the minivan was trying to hit her. B.P. testified that she jumped out of the way, but the minivan clipped the back of her foot. B.P. testified that she then ran between two houses when she saw the minivan jump a curb and drive towards her again. B.P. stated that she jumped over a fence, at which point the driver of the minivan stopped the car and exited the vehicle. B.P. identified the driver as Nicolai. B.P. testified that she knew Nicolai through Walls. B.P. testified that Nicolai began chasing her, ultimately caught up with her, and then began stabbing her multiple times with an unidentified object. B.P. testified that Nicolai told B.P. that she "wanted [the] baby to die." B.P. testified that Walls pulled Nicolai off of her and the two drove away. B.P. further testified that she managed to dial 911 at some point during the vehicle chase and stayed on the phone during the attack. A recording of the 911 call was played for the jury.

¶5     B.P. further testified that while in the hospital, she received several phone calls from a blocked phone number. B.P. answered the phone and heard Nicolai's voice saying she thought B.P. and B.P.'s unborn baby were dead. B.P. ended the call and spoke with Milwaukee Police about the calls.

¶6     Milwaukee Police Officer Brian Duerst testified that he was dispatched to the scene of the incident following B.P.'s 911 call. Duerst testified that he found B.P. with multiple "significant" lacerations and noticed blood on her clothing. Duerst then called for an ambulance. B.P. told Duerst that she had been stabbed by "Jamie." B.P. also described the minivan involved in the incident and

gave Nicolai's address to Duerst. Duerst testified that he went to the address B.P. provided, where he saw the minivan but did not find Nicolai.

¶7 Milwaukee Police Detective Jeffrey Emmanuelson testified that he met B.P. at the hospital, where she showed him the lacerations to her cheek, arms, legs, and stomach. B.P. told Emmanuelson that "Jamie 'Nicholson'" attacked her and Nicolai provided Emmanuelson with the same address she provided Duerst. After looking up the address provided by B.P., Emmanuelson was able to determine that the suspect was Nicolai. Emmanuelson collected B.P.'s clothes to enter into evidence. The jury was shown B.P.'s clothing while Emmanuelson described various cuts and blood stains on the clothes.

¶8 Emmanuelson testified that he went to the scene of the incident, where he observed tire marks going up on the grass and stopping at a fence. Emmanuelson also testified that B.P. informed him about phone calls she was receiving from Nicolai while in the hospital. Emmanuelson testified that he later spoke with Nicolai and she allowed police to download the contents of her cell phone. Emmanuelson reviewed the call logs from Nicolai's phone and saw five outgoing calls made to B.P.'s phone number. All five calls occurred at various times on December 10, 2015, while B.P. was in the hospital.

¶9 Natalie Ngyuen, a victim/witness advocate for the district attorney's office, testified about the events leading up to the disorderly conduct and bail jumping charges. Ngyuen testified that on March 1, 2017, she was in the courtroom for Nicolai's scheduled jury trial. Ngyuen testified that Nicolai stormed out of the courtroom, followed by her defense attorney, and then Nicolai started yelling at her attorney. Ngyuen stated that she deliberately kept B.P. away from Nicolai at that point, because she could hear "a couple of other things that I

thought it best for [B.P.] to stay in the separate room." Ngyuen testified that she witnessed law enforcement try to calm Nicolai down.

¶10 Milwaukee Police Detective Edmund Fitting testified that on March 1, 2017, he was at the Milwaukee County Courthouse when he heard a woman "yelling and screaming" in a courthouse hallway. Fitting saw people in the hallway back away from the woman—whom Fitting identified as Nicolai—and then heard Nicolai call another detective a bitch. Fitting helped escort Nicolai to a bench, at which point Nicolai stated "I'm going over to that bitch's house to beat her ass."[1] Fitting stated that Nicolai continued to shout and said "I can, basically, say anything I want to say. You know, I don't fucking care. And this is attorney client[] privilege." Fitting stated that Nicolai again referred to another detective as a bitch and continued to shout for approximately ten to fifteen minutes.

¶11 Deputy Sheriff Michael Koch testified that on March 1, 2017, he was working in his capacity as a courtroom bailiff when he witnessed Nicolai cause a "loud disturbance." Koch testified that he escorted Nicolai and her counsel to the elevators so that they could leave and end the disturbance.

¶12 The jury ultimately found Nicolai guilty as charged. The trial court imposed a total aggregate sentence for all four convictions of three years' initial confinement and three years' extended supervision with various conditions.

¶13 After sentencing, Nicolai's postconviction counsel brought a no-merit appeal, pursuant to WIS. STAT. RULE 809.32 (2017-18)[2] and ***Anders v.***

---

[1] It is unclear who Nicolai was threatening.

[2] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

*California*, 386 U.S. 738 (1967). Nicolai thereafter expressed an intent to discharge postconviction counsel and proceed *pro se*. We converted this case from a no-merit appeal to a regular appeal and permitted Nicolai to proceed with her direct appeal *pro se*.

## DISCUSSION

¶14 Nicolai's *pro se* appeal alleges several unsubstantiated allegations of police, prosecutorial, and judicial misconduct, along with several undeveloped arguments which vaguely appear in Nicolai's statement of facts. We decline to address these arguments and instead address what appears to be the crux of Nicolai's appeal, which is that there was insufficient evidence presented at trial to sustain the jury's verdict.

¶15 We view the evidence in the light most favorable to the verdict, and if more than one reasonable inference can be drawn from the evidence, we must accept the one drawn by the jury. *See* **State v. Poellinger**, 153 Wis. 2d 493, 504, 451 N.W.2d 752 (1990). "[T]he jury verdict will be overturned only if, viewing the evidence most favorably to the [S]tate and the conviction, it is inherently or patently incredible, or so lacking in probative value that no jury could have found guilt beyond a reasonable doubt." **State v. Alles**, 106 Wis. 2d 368, 376-77, 316 N.W.2d 378 (1982) (citation omitted). The jury is the sole arbiter of credibility of witnesses, and it alone is charged with the duty of weighing the evidence. *See* **Poellinger**, 153 Wis. 2d at 506.

¶16 Nicolai was charged with four crimes: (1) second-degree recklessly endangering safety; (2) substantial battery intending bodily harm with the use of a dangerous weapon; (3) disorderly conduct; and (4) bail jumping.

¶17    To convict Nicolai of second-degree recklessly endangering safety, the State was required to prove that Nicolai:  (1) "endangered the safety of another human being"; and (2) "endangered the safety of another by criminally reckless conduct."  *See* WIS JI—CRIMINAL 1347.  This requires a showing that Nicolai's conduct created an unreasonable and substantial risk of death or great bodily harm to another and that Nicolai was aware that her conduct created such a risk.  *See id.* (defining criminally reckless conduct and great bodily harm).

¶18    B.P. testified that Nicolai attempted to run her over with a minivan and then stabbed her multiple times while wishing B.P.'s unborn child dead.  Milwaukee Police found B.P. bleeding, with lacerations all over her body, including her stomach.  Milwaukee Police found tire tracks at the scene of the incident, and later found the minivan at Nicolai's address.  Police also collected B.P.'s blood-stained clothes after B.P. was admitted to the hospital.  B.P. told police that Nicolai was calling her at the hospital and told B.P. that she thought B.P. and her unborn baby were dead.  Viewing this evidence in a light most favorable to the State and conviction, we conclude that a jury, acting reasonably, could have found Nicolai guilty of second-degree recklessly endangering safety.

¶19    To prove substantial battery intending bodily harm, the State had to show that Nicolai:  (1) "caused substantial bodily harm" to B.P.; and (2) "intended to cause bodily harm" to B.P.  *See* WIS JI—CRIMINAL 1222.  "Substantial bodily harm" is bodily injury that causes, among other things, a laceration requiring stitches.  *See* WIS. STAT. § 939.22(38).  "'Bodily harm' means physical pain or injury, illness, or any impairment of physical condition."  *See* § 939.22(4).  The State was also required to prove that Nicolai used, threatened to use, or possessed a dangerous weapon during the commission of the battery.  *See* WIS. STAT. § 939.63; WIS JI—CRIMINAL 990.

7

¶20    The record supports the jury's verdict.  As stated, B.P. testified that Nicolai attempted to run her over with a minivan, chased her, and then attacked her with a sharp object.  B.P. testified that she felt sharp blows all over her body.  B.P. sustained multiple stab wounds.  Pictures of the wounds were shown to the jury, along with B.P.'s clothes, which contained slit marks and dried blood.  B.P. also received stitches for her wounds.  Viewing this evidence in a light most favorable to the State and conviction, we conclude that a jury, acting reasonably, could have found Nicolai guilty of substantial battery intending bodily harm with the use of a dangerous weapon.

¶21    As to the disorderly conduct charge relating to the March 1, 2017 courthouse incident, the State was required to prove that:  (1) Nicolai engaged "in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct"; and (2) "[t]he conduct of the defendant, under the circumstances as they then existed, tended to cause or provoke a disturbance."  *See* WIS. STAT. § 947.01; WIS JI—CRIMINAL 1900.

¶22    Multiple witnesses testified that Nicolai stormed out of the courtroom and began shouting in a hallway of the courthouse.  Fitting testified that Nicolai threatened an unknown woman, referred to a Milwaukee Police Detective as a "bitch" several times, was told to quiet down, and shouted that she was entitled to say what she wanted under the doctrine of attorney-client privilege.  Fitting further testified that Nicolai caused a scene, shouted for ten to fifteen minutes, and caused others in the courthouse hallway to back away from her.  Koch testified that he heard the disturbance and escorted Nicolai to the elevator so that she could leave.  Viewing this evidence in a light most favorable to the State and conviction, we conclude that a jury, acting reasonably, could have found Nicolai guilty of disorderly conduct.

¶23 Finally, as to the felony bail jumping charge, the State was required to prove that Nicolai: (1) was charged with a felony; (2) was released from custody on bond; and (3) "intentionally fail[ed] to comply with the terms of the bond." *See* WIS. STAT. § 946.49(1)(b); WIS JI—CRIMINAL 1795.

¶24 The record supports the jury's finding that while released from custody on a felony bond, Nicolai engaged in belligerent behavior outside of a courtroom, surrounded by bystanders. Accordingly, viewing this evidence in a light most favorable to the State and conviction, we conclude that a jury, acting reasonably, could have found Nicolai guilty of felony bail jumping.

¶25 The State addresses multiple other arguments that it inferred from Nicolai's brief, including an allegation of ineffective assistance of counsel, alleged discovery violations, and a self-defense claim. While we appreciate the State's thoroughness, we agree that Nicolai's arguments are either unpreserved or undeveloped. Nicolai makes multiple fleeting and accusatory statements throughout the course of her brief. We will not abandon our neutrality to develop legal arguments for *pro se* parties. *See **Industrial Risk Insurers v. American Eng'g Testing, Inc.***, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82.

¶26 Furthermore, we conclude that Nicolai is not entitled to a new trial in the interest of justice. This court may in its discretion set aside a verdict and order a new trial in the interests of justice where "it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried[.]" *See* WIS. STAT. § 752.35. We agree with the State that "Nicolai has failed to demonstrate that the [trial] court erred in its evidentiary rulings, there is no articulated argument that justice has been miscarried, and the

controversy was fully tried here, leading to unanimous guilty verdicts for all charges."

¶27    For the foregoing reasons, we affirm the trial court.

*By the Court.*—Judgments affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.