OSEMAN, Plaintiff in error, v. STATE, Defendant in error.

*October 7—November 1, 1966.*

For the plaintiff in error there was a brief by *Malloy & Mayew* of Kenosha, and oral argument by *John E. Malloy.*

For the defendant in error the cause was argued by *Betty R. Brown*, assistant attorney general, with whom on the brief were *Bronson C. La Follette*, attorney general, and *William A. Platz*, assistant attorney general.

HANLEY, J. Three issues are presented in the writ of error. First, was repeated testimony which informed the jury that one Marcel Dupree who was seen leaving the burglarized tavern and the defendant were friends irrelevant and prejudicial? Second, did the trial court err in refusing to grant a mistrial based on the fact that three members of the jury had read an account of the case while the trial was in progress which informed them that one Marcel Dupree, a friend of the defendant, had previously pleaded guilty? Third, was the evidence sufficient to find the defendant guilty beyond a reasonable doubt?

*Relevant Evidence.*

Testimony was admitted into evidence that a number of police officers had seen the defendant in the company of Marcel Dupree on many occasions prior to the time of the commission of the crime. Officer Robert K. Chase testified that he knew both the defendant and Dupree and had seen them together on at least 25 occasions.

Defendant argues that the admission of this type of evidence was erroneous in that the evidence was not relevant.

31A C. J. S., Evidence, pp. 426, 427, sec. 158, states:

". . . Evidence is relevant if it tends to prove or disprove a fact in issue or tends to establish a fact from which the existence or nonexistence of the fact in issue can be directly inferred, and in some degree advances the inquiry and has probative value; . . ."

As further stated on p. 451, sec. 173, of the same work:

"Although evidence to prove identity must be relevant, much latitude is given in the admission of evidence to establish the identity of persons, and in the absence of direct evidence or inspection by the jury, identity may be established by circumstantial evidence.

"Any fact, however slight, which tends to satisfy a person of ordinary judgment as to identity is admissible on the issue. . . ."

As applied more specifically to evidence in criminal cases, 1 Wharton's, Anderson, Criminal Evidence (12th ed.), pp. 284–287, sec. 148, states:

"Evidence is relevant when it is persuasive or indicative that a fact in controversy did or did not exist because the conclusion in question may be logically inferred from the evidence. The criterion of relevancy is whether or not the evidence adduced tends to cast any light upon the subject of the inquiry. Evidence of any fact is admissible as relevant which might establish the hypothesis of innocence, or show the defendant's guilt. Any evidence that assists in getting at the truth of the issue is relevant; in other words, *any fact which tends to prove a material issue is relevant, even though it is only a link in the chain of facts which must be proved to make the proposition at issue appear more or less probable. Relevancy is not determined by resemblance to, but by the connection with, other facts.*" (Emphasis supplied.)

The same work, p. 359, sec. 181, points out that:

"Identification of the defendant as the guilty agent is essential. Any evidence which serves to establish the identity of the criminal agent is relevant, and if competent, is admissible. . . ."

The information alleged that the defendant, together with Marcel Dupree, did on November 24, 1964, burglarize certain premises. The evidence clearly established that Dupree was seen coming out of a large broken window in the front door of the forcibly entered tavern at about 2:40 a.m.; that more than one person was heard moving around in the forcibly entered tavern; that someone had escaped through the window in the men's washroom after the police had arrived on the scene and apprehended Dupree; that that someone had dropped a

large amount of change beneath the window while escaping; that fresh footprints in the snow were discovered by one of the police officers and that those footprints led to the defendant; that the defendant was discovered, very shortly after the burglary, on a cold winter night, lying on the ground and attempting to hide under a parked car; that he had succeeded in getting his right hand, arm, and shoulder under the car, which had a flat tire, and that in his hand and under the car was money of the same denominations as that stolen minutes before from the burglarized tavern. The defendant was discovered approximately 85 to 90 feet away from the tavern.

The state had to prove that the defendant was the "someone" who entered the tavern with Dupree. The fact that Dupree and the defendant were acquainted and close associates certainly throws light upon the question of the identity of the second burglar and helps, along with the other very convincing circumstantial evidence, to show that the defendant did enter into the tavern with Dupree, with an intent to steal.

As pointed out in 31A C. J. S., Evidence, pp. 441, 442, sec. 161:

"The trial court usually has considerable discretion as to the latitude of circumstantial evidence, and great latitude generally is allowed in admitting it, and this is especially true where the circumstances are such that direct evidence is lacking."

Identification of the defendant as the offender is essential. The trial court did not abuse its discretion in allowing testimony as to the prior association of the defendant with Dupree because that evidence was relevant as a link in the chain of circumstantial evidence which clearly established that the defendant was the person who burglarized the tavern, together with Dupree. We conclude the evidence was relevant.

*Denial of Motion for Mistrial.*

At the beginning of the trial the trial court cautioned the jury that its members should not read about the case in newspapers or listen to broadcasts about the case.

On the morning of May 26, 1965, the second day of the trial, the trial court stated that he had read an article in the newspaper about the case. The trial judge then asked the jurors whether any of them had read the article.

Jurors Gerald Sadlom, Les Thornton, and Richard Firchow stated they had read the article. Juror Thornton was individually questioned and stated the article did not affect him, that it would not influence his ability to consider the case solely on the evidence presented in court; that he felt he would render an unbiased and honest verdict and that he would return a verdict of not guilty if the state failed to prove its case beyond a reasonable doubt. The other jurors who had read the article made similar responses to similar inquiries.

The only fact mentioned which could in any way be considered as creating a possibility of prejudice against the defendant is a statement that Marcel Dupree, a friend of the defendant, had pleaded guilty to the burglary charge. The defendant claims that the trial court erred in denying his motion for a mistrial.

The motion is addressed to the discretion of the trial court and an appellate court will not reverse unless there has been abuse of discretion.

In Anno. 31 A. L. R. (2d) 417, there is an annotation on the exact problem presented by this case. The general rule is stated on page 421 as follows:

". . . The inquiry, therefore, must center primarily around the facts in each case, and the ultimate decision, . . . rests in the sound judicial discretion of the court."

The question really is to determine under the facts if the error is prejudicial and this is for the trial judge to determine in light of the whole proceeding. If the evi-

dence presented in a case was extremely weak and the same error occurred, it could justifiably be deemed grounds for a mistrial.

In the record it is quite clear that the trial judge questioned the jurors individually and repeatedly and found to his satisfaction that they were not influenced by the newspaper article.

The trial court could have concluded that the fact of Dupree's plea of guilty being disclosed in the newspaper article could not have influenced the jurors in view of their having heard and properly so the testimony of various police officers describing Dupree's exit from the tavern through the broken pane of glass in the front door and having been wounded in flight when he failed to heed the officers' warning to stop.

A similar type of newspaper article was held not to be prejudicial in the recent case of *United States v. Feldman* (2d Cir. 1962), 299 Fed. (2d) 914, certiorari denied, 370 U. S. 910, 82 Sup. Ct. 1256, 8 L. Ed. (2d) 403. In that case the trial judge learned that 10 jurors had read a newspaper article in which it was stated that two men involved with the defendant had pleaded guilty. The judge questioned the jurors about the effect of the article on them and was assured that the jurors would arrive at their verdict on the basis of the evidence presented in court and under the judge's instructions. A motion for a mistrial was denied. In upholding the denial of the motion, the circuit court of appeals wrote, on page 917:

"In the case at bar the newspaper article did not contain any detrimental statements concerning Feldman, but referred only to the guilty pleas of defendants Bitz and Waltzer. It was entirely consistent with his defense and the evidence presented for a jury to conclude that although extortion may have been committed by Bitz, appellant was not connected with the crime. We do not think that the principle of Marshall extends to the instant case. See United States v. Crosby, 294 F. 2d 928, 948–950 (2 Cir. 1961)."

In *Burns v. State* (1911), 145 Wis. 373, 383, 128 N. W. 987, the court states the law, as it exists today in Wisconsin, as follows:

". . . Though the conduct of the officer and the jury as well, and the newspaper too, are reprehensible to a high degree, we are unable to reach a conclusion that, had the improper conduct not occurred, the result might, within reasonable probabilities, have been different. . . ."

The defendant in error correctly points out in its brief that sec. 2829, Stats. 1909, referred to, was the harmless-error provision of the statute, which is comparable to the present sec. 274.37. Thus it becomes evident that a verdict is upset only when, in the discretion of the court, the court believes that in view of the proceedings as a whole, substantial rights of the complaining party have been affected. It is our belief that the substantial rights of the plaintiff in error were not affected and that no reasonable jury could have fairly come to any other decision.

For sec. 274.37, Stats., to intervene and save the verdict, there should be an overwhelming quantity of other evidence in the case. *Bartz v. State* (1938), 229 Wis. 522, 282 N. W. 562. And from the record it is obvious there was such overwhelming evidence against the defendant Oseman.

Other Wisconsin cases related to this particular subject are in accord with the above result. See *Baker v. State* (1894), 88 Wis. 140, 59 N. W. 570; *Hughes v. State* (1901), 109 Wis. 397, 85 N. W. 333; *Schissler v. State* (1904), 122 Wis. 365, 99 N. W. 593; and *Hempton v. State* (1901), 111 Wis. 127, 86 N. W. 596. These cases stand for the proposition that unless a newspaper article is so prejudicial as to influence the verdict of the jury, it is solely within the judge's discretion as to whether a mistrial is in order.

## Sufficiency of Evidence.

The defendant contends that the record does not afford sufficient evidence upon which a finding of guilty beyond a reasonable doubt can be made. On an appeal in a criminal case the test of the sufficiency of the evidence for a conviction is "whether the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendant's guilt beyond a reasonable doubt." *State v. Stevens* (1965), 26 Wis. (2d) 451, 463, 132 N. W. (2d) 502; *State v. Johnson* (1960), 11 Wis. (2d) 130, 137, 104 N. W. (2d) 379; *State v. John* (1960), 11 Wis. (2d) 1, 103 N. W. (2d) 304; *Parke v. State* (1931), 204 Wis. 443, 235 N. W. 775.

This court said in *State v. Stevens, supra* (p. 464):

". . . The sufficiency test does not require the members of this court to accept such credible evidence and become equally convinced of the guilt of the defendant beyond a reasonable doubt but only that the members of this court are satisfied that the jury on the credible evidence submitted could find the defendant guilty beyond a reasonable doubt. If so, the defendant's guilt was sufficiently proven. . . ."

The defendant's contention is principally based on the fact that the evidence was entirely circumstantial and therefore worthless and cannot provide the basis for a conviction. Circumstantial evidence may be and often is stronger and more satisfactory than direct evidence. *State v. Johnson, supra; Kopacka v. State* (1964), 22 Wis. (2d) 457, 464, 126 N. W. (2d) 78; *Hemmis v. State* (1964), 24 Wis. (2d) 346, 353, 129 N. W. (2d) 209; *Alston v. State* (1966), 30 Wis. (2d) 88, 98, 99, 140 N. W. (2d) 286.

Clyde Caudill testified that at about 1:30 a.m., on November 24, 1964, he and his wife closed the tavern for the night. He testified as to the activities involved in

closing of his business, which included the locking of all doors and windows.

Mrs. Caudill testified that she set up the cash register for the next day, that she placed the same amount of money in the cash register each night, and this money was always in the same denominations. On November 24th she placed $62 in the cash register consisting of four $5 bills, twenty $1 bills, $5 worth of 50-cent pieces, $10 worth of quarters, $5 worth of dimes and $2 worth of nickels. In addition, there was an unknown quantity of pennies in the cash register. The testimony further disclosed that while the Caudills were in bed they heard a door slam and glass break. Immediately, at about 2:30 a.m., Mrs. Caudill called the police and during the period of about five minutes before the police arrived she heard noises within the tavern. It sounded like more than one person. They heard the police arrive and order someone to stop. Thereafter they heard shots. When the Caudills came downstairs, they found that a large window in the front door had been broken, that the cash register was empty, and that $2.35 in change was on the floor below the register. Both Mr. and Mrs. Caudill knew the defendant and Marcel Dupree, and neither of them had given these men permission to enter the tavern after closing hours.

The testimony disclosed that Police Officer Gary Aull was walking his beat when, at 2:36 a.m., on November 24th, he got a call over his walkie-talkie that there was a possible break-in at the Tuckaway Bar. He was nearby and ran in the direction of the bar. As he approached, he saw Marcel Dupree whom he previously knew emerge through the window in the front door of the bar. The glass in the window had been previously broken out. Dupree started running and a squad car pulled up near him. He was ordered to stop, but he kept running. Still another squad car arrived and after a few shots were

fired, Dupree, also known as John Haebig, was shot in the leg and fell to the sidewalk. He was captured and taken away in an ambulance.

Officer Aull then started checking the outside of the tavern. He checked the men's washroom window and found that the window and screen were intact. A black Cadillac was parked in the alleyway on which this window faced. He continued his checking of other parts of the tavern building and then heard an officer holler that he had discovered a broken window.

Officer Aull ran over and the men's washroom window, which he had found closed and the screen intact a short time before, was open and the screen had been kicked away. There was also loose change lying in the driveway, and a handprint and footprint was observed on the front fender of the Cadillac, which was parked under the window.

Officer Barry Keller also observed this and then checked the nearby area. He found fresh footprints in the snow leading to the nearby parking lot of the Cream City Hotel. When he got to the parking lot, he saw a man partially underneath a car parked in the lot. This man was the defendant, whom he had previously known. The automobile that the defendant had been trying to get under had a flat right front tire.

Officer Keller called for assistance and Officer Aull ran over. The two officers looked under the car and observed that the defendant had money clenched in his right hand. His right hand, arm and shoulder were under the car.

Officer Aull, after the owner of the car had moved it, recovered $48.30 from under the car and $11.66 was recovered by him from under the men's washroom window. This recovered money totaled $59.96, and consisted of four $5 bills, twenty $1 bills, ten 50-cent pieces, 38 quarters, 38 dimes, 32 nickels, and 6 cents. This money,

together with the $2.35 in change found on the tavern floor added up to $62.31. The cash register had contained $62.00 and a quantity of pennies.

The defendant was discovered at a point in the Cream City Hotel parking lot which is 85 to 90 feet due east of the tavern.

## Conclusion.

The credibility of the witnesses and the weight to accord their testimony were properly a function for determination by the jury. *State v. Lombardi* (1959), 8 Wis. (2d) 421, 99 N. W. (2d) 829.

We find there was ample credible evidence to support the jury's verdict that the defendant was guilty of burglary. We find no error prejudicial to the defendant and the trial court properly denied the defendant's motion after verdict.

*By the Court.*—Judgment affirmed.