STATE of Wisconsin, Plaintiff-Respondent,

v.

Justin PHARR, Defendant-Appellant-Petitioner.

Supreme Court

*No. 81–1891–CR. Argued November 2, 1983.—
Decided November 30, 1983.*

(Also reported in 340 N.W.2d 498.)

For the defendant-appellant-petitioner there were briefs by *Donald S. Eisenberg* and *Eisenberg, Giesen, Ewers & Hayes, S.C.*, Madison, and oral argument by *Stephen J. Eisenberg*.

For the plaintiff-respondent the cause was argued by *Sally L. Wellman*, assistant attorney general, with whom on the brief was *Bronson C. La Follette*, attorney general.

WILLIAM G. CALLOW, J. This is a review of an unpublished decision of the court of appeals affirming a judgment of conviction for attempted first-degree murder, party to a crime. The judgment of conviction was entered by the Rock County circuit court, Judge Gerald W. Jaeckle. We affirm the decision of the court of appeals.

The issues presented on this appeal are whether the trial court abused its discretion in admitting other crimes evidence and whether there was sufficient evidence to support a bindover at the preliminary examination and to sustain a conviction for attempted first-degree murder, party to a crime. The court of appeals has also identified the related issue of what procedures should be used in reviewing the decision of a trial court where the court has failed to articulate the basis for its exercise of discretion in admitting evidence.

Testimony revealed that early on the morning of October 18, 1980, the defendant, Justin Pharr, and two other persons, Timothy Rice and his sister, Sharon, drove from Madison to the rural Rock county home of Dennis and Mary Turner. The purpose of the trip was to rob the Turners of drugs and money to compensate the defendant and Rice for the money they had paid to Dennis Turner for cocaine which proved to be ineffective. At approximately 3 a.m., the trio entered the Turner's home, where they threatened and abused the Turners and their children. The defendant and Timothy Rice each were armed with a handgun, both of which were fired during the course of the robbery. The trio removed from the Turner home various household items and several guns and loaded the stolen goods into their car. They then started back to Madison with Timothy Rice driving.

At approximately 4 a.m., shortly after the car entered Interstate Highway 90 near Janesville, Trooper Joseph Gustafson, who at the time was unaware of the robbery, stopped the car because he had seen it cross the centerline a couple of times. Gustafson left his car and approached the suspect car just as Timothy Rice exited his car. As he neared the driver's side, Gustafson shined his flashlight in the car and noticed a gun lying on the front seat. As Gustafson began to ask about the gun, Timothy Rice reached in the window, grabbed the gun, pointed

it at Gustafson, and fired several shots in rapid succession. As Gustafson dove into the ditch and then got up, Rice jumped back into the car and sped away.

Gustafson returned to his car and began following Rice's car. Gustafson radioed ahead in order to alert other troopers that the Rice car should be stopped. Shortly after 4 a.m., Trooper John Luther received Gustafson's radio call, and picked up the chase near the intersection of Highway 59 and I–90. Luther pursued the Rice car, traveling at speeds of approximately 100 miles per hour, on I–90 for several miles until the car turned off on Highway 51 toward Stoughton. As the two cars were approaching Stoughton in Dane county, the defendant leaned out of the front passenger window of Rice's car and fired his gun several times at Luther's car, shattering its windshield. Rice's car was stopped in Stoughton, and the defendant was arrested.

While the defendant fully admitted that he participated in the robbery and fired his gun at Trooper Luther's car, he denied that he encouraged or participated in Rice's shooting at Trooper Gustafson. The defendant testified that in fact he was completely surprised at the turn of events when their car was stopped and Rice began shooting at Gustafson. Nevertheless, the defendant testified that, when the car was pulled over by Gustafson, the defendant told Rice to tell Gustafson that they were moving Rice's sister, Sharon. The defendant, while denying that he thought they were being stopped because of the robbery, admitted that he did not know that Gustafson was unaware of the robbery. He further testified that he thought they were in serious trouble when Gustafson noticed the gun on the front seat and the stolen property.

Prior to trial, the defendant made a motion in limine to exclude any evidence regarding his alleged involvement in a Dane county bank robbery and the fact that he fired gunshots at Trooper Luther's car in Dane county.

The asserted grounds for keeping the other crimes evidence out were that it would not fall within any of the exceptions of sec. 904.04, Stats.; that it would be extrinsic evidence of the defendant's credibility, the admissibility of such evidence being prohibited by sec. 906.08; and that the evidence would be "very prejudicial," and its probative value would be outweighed by unfair prejudice. Defense counsel did not specify how the evidence concerning the Dane county shooting incident would be unduly prejudicial. In response to this motion, the state asserted that it would not introduce evidence of the alleged bank robbery, but would seek to introduce evidence on the Dane county shooting incident. The state argued that the Dane county shooting incident evidence was admissible to show the defendant's state of mind to escape at all costs, that it ratified the earlier Rock county shooting incident, and that the Dane county incident was a continuation of the Turner armed robbery. In ruling on the motion, the court stated:

"I think that the evidence of what happened in Dane County—that is the shooting at Deputy [sic] Luther of the Dane County Sheriff's Department [sic]—would be admissible for reasons Mr. Keegan stated. Evidence of any armed robbery of any bank would appear to me to be highly prejudicial and would appear to me to be inadmissible."

At the close of the state's case, the trial court denied the defendant's motion for a mistrial on the basis of the admission of the allegedly prejudicial evidence concerning the Dane county shooting incident. The state then made a motion to prohibit the defendant from testifying as to the nature of the charge pending against him in Dane county circuit court for the Dane county shooting incident. In discussing the motions, defense counsel expressed concern that the shooting incident evidence would tend to cause the jury to convict on the basis of the Dane

county shooting even if there was insufficient evidence to convict for the Rock county shooting. The trial court agreed to give the jury a cautionary instruction on the use of evidence concerning the Dane county shooting incident. Accordingly, at the end of the trial, the court instructed the jury that it could not use the evidence of the Dane county incident to conclude that the defendant had a bad character and acted in conformity with his character in committing the charged offense. The court further instructed that the evidence was admitted solely on the issue of preparation or plan and that the defendant was not charged in this case with any offenses he might have committed in Dane county.

On April 30, 1981, the jury found the defendant guilty of attempted first-degree murder, party to a crime, in violation of secs. 940.01(1),[1] 939.32(1),[2] and 939.05,[3]

[1] Sec. 940.01(1), Stats., provides:

"First-degree murder. (1) Whoever causes the death of another human being with intent to kill that person or another is guilty of a Class A felony."

[2] Sec. 939.32(1), Stats., provides, in relevant part:

"Attempt. (1) Whoever attempts to commit a felony or a battery as defined by s. 940.19 or theft as defined by s. 943.20 may be fined or imprisoned or both not to exceed one-half the maximum penalty for the completed crime; except:

"(a) Whoever attempts to commit a crime for which the penalty is life imprisonment is guilty of a Class B felony."

[3] Sec. 939.05, Stats., provides:

"Parties to crime. (1) Whoever is concerned in the commission of a crime is a principal and may be charged with and convicted of the commission of the crime although he did not directly commit it and although the person who directly committed it has not been convicted or has been convicted of some other degree of the crime or of some other crime based on the same act.

"(2) A person is concerned in the commission of the crime if he:

"(a) Directly commits the crime; or

"(b) Intentionally aids and abets the commission of it; or

Stats. On July 10, 1981, the court entered a judgment of conviction and sentenced the defendant to an indeterminate term not to exceed eighteen years. On October 1, 1981, the defendant filed a notice of appeal from the judgment of conviction.[4]

On appeal, the defendant argued that the trial court erred in admitting evidence of the Dane county shooting incident and that there was insufficient evidence for the bindover after the preliminary examination and for the conviction after trial. The court of appeals sua sponte identified as an issue the failure of the trial court to perform the balancing test required by sec. 904.03, Stats.,[5] before admitting the Dane county shooting evidence. After weighing the various procedural alternatives it believed were approved by this court, the court of appeals on September 27, 1982, remanded the case to permit the

---

"(c) Is a party to a conspiracy with another to commit it or advises, hires, counsels or otherwise procures another to commit it. Such a party is also concerned in the commission of any other crime which is committed in pursuance of the intended crime and which under the circumstances is a natural and probable consequence of the intended crime. This paragraph does not apply to a person who voluntarily changes his mind and no longer desires that the crime be committed and notifies the other parties concerned of his withdrawal within a reasonable time before the commission of the crime so as to allow the others also to withdraw."

[4] The defendant was also convicted on eight other charges arising from the Turner robbery. He appeals only from his conviction for attempted first-degree murder, party to a crime.

[5] Sec. 904.03, Stats., provides:

"**Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.** Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

trial court to conduct the necessary balancing test.[6] On October 4, 1982, the trial court filed a certification with the court of appeals. In the certification, the trial court reviewed the evidence presented in the case and determined that the probative value of the Dane county shooting evidence far exceeded the danger of unfair prejudice to the defendant. On December 24, 1982, the court of appeals accepted the trial court's determination under the balancing test and affirmed the judgment of conviction, finding that the evidence supported the bindover and the jury's conviction. The defendant petitioned this court to review the court of appeals' decision, and we granted the petition on March 15, 1983.

Upon review of evidentiary issues, "[t]he question on appeal is not whether this court, ruling initially on the admissibility of the evidence, would have permitted it to come in, but whether the trial court exercised its discretion in accordance with accepted legal standards and in accordance with the facts of record." *State v. Wollman,* 86 Wis. 2d 459, 464, 273 N.W.2d 225 (1979). Thus, the test is not whether this court agrees with the ruling of the trial court, but whether appropriate discretion was in fact exercised. *Id.* This court will not find an abuse of discretion if there is a reasonable basis for the trial court's determination. *Boodry v. Byrne,* 22 Wis. 2d 585, 589, 126 N.W.2d 503 (1964). For a discretionary decision of this nature to be upheld, however, "there should be evidence in the record that discretion was in fact exercised and the basis of that exercise of discretion should be set forth." *State v. Hutnik,* 39 Wis. 2d 754, 764, 159 N.W.2d 733 (1968).

---

[6] We note that the court of appeals decided the Dane county shooting evidence was relevant and admissible as an other crimes exception under sec. 904.04(2), Stats.

The court of appeals correctly determined that the trial court had not explicitly engaged in the balancing test required by sec. 904.03, Stats., nor had the trial court articulated clearly the reasons for admitting the Dane county shooting evidence. After reviewing previous case law and identifying what it believed was some inconsistency in this court's approach to this problem, the court of appeals concluded it had the option to retain jurisdiction and remand the case for further findings by the trial court. While previous cases have addressed this issue, we hold that, where the trial court fails to set forth its reasoning in exercising its discretion to admit evidence, the appellate court should independently review the record to determine whether it provides a basis for the trial court's exercise of discretion. *See State v. Alsteen,* 108 Wis. 2d 723, 728, 324 N.W.2d 426 (1982); *Hammen v. State,* 87 Wis. 2d 791, 800, 275 N.W.2d 709 (1979); *McCleary v. State,* 49 Wis. 2d 263, 277, 182 N.W.2d 512 (1971). Because we hold the court of appeals should have independently reviewed the record, our review will encompass only the original record as it was presented to the court of appeals on the first appeal.

We have held that trial courts must apply a two-prong test in determining whether other crimes evidence is admissible. *See State v. Spraggin,* 77 Wis. 2d 89, 95, 252 N.W.2d 94 (1977); *Hammen,* 87 Wis. 2d at 798. The first prong requires the trial court to determine whether the evidence fits within one of the exceptions set forth in sec. 904.04(2), Stats.[7] The second prong requires the

---

[7] Sec. 904.04(2), Stats., provides:

"**Character evidence not admissible to prove conduct; exceptions; other crimes.**

". . .

"(2) OTHER CRIMES, WRONGS, OR ACTS. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a

trial court to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice to the defendant. *Alsteen,* 108 Wis. 2d at 729.

We have recognized that "[i]mplicit within our two-prong analysis is the requirement that other crimes evidence be relevant to an issue in the case." *Id.* Sec. 904.-01, Stats., defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." We have interpreted this provision to mean that "[a]ny fact which tends to prove a material issue is relevant." *Rogers v. State,* 93 Wis. 2d 682, 688, 287 N.W.2d 774 (1980).

The determination of relevancy can never be an exact science because it necessarily involves the trial court's considered judgment whether a particular piece of evidence tends to establish a fact of consequence in a given set of circumstances. The issue of relevancy "must be determined by the trial judge in view of his or her experience, judgment and knowledge of human motivation and conduct." *United States v. Williams,* 545 F.2d 47, 50 (8th Cir. 1976), citing C. McCormick, *Handbook of The Law of Evidence,* sec. 185 at 438 (Hornbook Series 2d ed. 1972). *See also State v. Wedgeworth,* 100 Wis. 2d 514, 540, 302 N.W.2d 810 (1981) (Abrahamson, J., dissenting) ; *Oseman v. State,* 32 Wis. 2d 523, 527, 145 N.W.2d 766 (1966). Although we need not determine whether relevancy, as defined in sec. 904.01, Stats., is a question of fact or a question of law, we agree with the follow-

person in order to show that he acted in conformity therewith. This subsection does not exclude the evidence when offered for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

ing analysis of Federal Rule of Evidence 401, from which sec. 904.01 was derived:

"Somewhat akin, although perhaps not usually thought of as an aspect of discretion, is the recognition that the judge's own experience and conceptions, rather than legal precedents, furnish the basis for some determinations. . . . Rule 401, by furnishing no standards for the determination of relevancy, implicitly recognizes that questions of relevancy cannot be resolved by mechanical resort to legal formulae. . . .

"Discretion implies not only the grant of a 'wide scope of decision' to a trial judge, but also awareness that on review the appellate court will accord the trial judge 'a limited right to be wrong,' and within these limits will not reverse his determination, even if it disagrees with his ruling."

J. Weinstein and M. Berger, *Weinstein's Evidence,* par. 401[01] at 401–9 (1982) (footnotes omitted). In light of the nature of the decision concerning relevancy, we hold that the trial court's determination of relevancy will be upheld unless it constitutes an abuse of discretion.[8]

We conclude under the first prong that evidence of the Dane County shooting incident was relevant and properly admitted as an other crimes exception under sec. 904.04(2), Stats. We have discussed what consti-

---

[8] This standard of review comports with cases applying Rule 401 of the Federal Rules of Evidence. *See, e.g., United States v. Aulet,* 618 F.2d 182, 191 (2d Cir. 1980); *Marquis v. Chrysler Corp.,* 577 F.2d 624, 636–37 (9th Cir. 1978); *United States v. Harris,* 542 F.2d 1283, 1317 (7th Cir. 1976).

In *State v. Feela,* 101 Wis. 2d 249, 264 n. 4, 304 N.W.2d 152 (Ct. App. 1981), the court of appeals interpreted our decision in *Barrera v. State,* 99 Wis. 2d 269, 278–81, 298 N.W.2d 820 (1980), to imply that the initial determination of relevancy is a question of law. This proposition does not find support in our decision in *Barrera.* Anything in *State v. Feela, supra,* contrary to our holding in this case is hereby overruled.

tutes a "plan" for purposes of using other crimes evidence:

".  .  . The word 'plan' in sec. 904.04(2) means a design or scheme formed to accomplish some particular purpose.  .  .  . Evidence showing a plan establishes a definite prior design, plan, or scheme which includes the doing of the act charged. As Wigmore states, there must be 'such a concurrence of common features that the various acts are materially to be explained as caused by a general plan of which they are the individual manifestations.' " *Spraggin,* 77 Wis. 2d at 99 (footnote omitted).

The state sought to introduce evidence to show that the defendant was participating in a plan which included the robbery and escape at all costs from the scene of the crime. The subsequent shooting in Dane county was relevant to show that the defendant was a participant in the Rock county shooting, rather than an innocent bystander. The other crimes evidence was not introduced to show the character of the defendant, as prohibited by sec. 904.-04(2). Rather, the act of shooting at Trooper Luther in Dane county explains the Rock county shooting incident " 'as caused by a general plan [to rob the Turners and escape at all costs] of which they are the individual manifestations.' " *Spraggin,* 77 Wis. 2d at 99, quoting 2 Wigmore, *Evidence,* sec. 304 (3d ed. 1940). We also note that the Dane county shooting incident was relevant based upon "its nearness in time, place and circumstances to the alleged crime or element sought to be proved." *Whitty v. State,* 34 Wis. 2d 278, 294, 149 N.W.2d 557 (1967), *cert. denied,* 390 U.S. 959 (1968). We have recognized that "any fact which tends to prove a material issue is relevant, even though it is only a link in the chain of facts which must be proved to make the proposition at issue appear more or less probable. Relevancy is not determined by resemblance to, but by the connection with, other facts." 1 R. Anderson, *Wharton's Crim-*

*inal Evidence* sec. 148 at 286–87 (12th ed. 1955) (footnotes omitted) (approved in *Oseman,* 32 Wis. 2d at 526). Thus it was reasonable to conclude that the defendant's conduct under similar circumstances a few minutes after the Rock county shooting incident could explain the defendant's involvement in the Rock county shooting incident.[9]

We conclude, based upon our independent review of the record, that the second prong of the test—namely, whether the probative value of the evidence is substantially outweighed by its prejudicial effect—is satisfied in this case. As we noted earlier, there should be evidence in the record that discretion was in fact exercised. *Hutnik,* 39 Wis. 2d at 764. The record reveals that, although the trial court did not explicitly rule that the probative value of the evidence was not substantially outweighed by its prejudicial effect, such a ruling was implicit in the trial court's decision to admit evidence of the Dane county shooting incident. When it made its ruling, the trial court had before it the defendant's motion to exclude based, in part, on the grounds of unfair prejudice. We note that defense counsel failed to specify the nature of the unfair prejudice or to pursue the matter further when the court made its ruling, and this contributed to the inadequacy of the record. In the same ruling, the trial court decided to exclude evidence of an alleged bank robbery by the defendant because it would be "highly

---

[9] We note that in *Barrera v. State,* 99 Wis. 2d 269, 298 N.W.2d 820 (1980), we held that evidence of a slaying by the defendant in another state twelve hours after the original killing was relevant to the defendant's state of mind and plan or scheme in the first killing. Clearly, the facts of this case present an even closer and more reliable connection between the original act (Turner robbery) and the defendant's subsequent conduct (Rock county and Dane county shootings).

prejudicial." We conclude that this exclusion because of prejudice ruling on the bank robbery evidence implied the trial court determined that evidence of the shooting incident, which was admitted at the same time, was *not* unduly prejudicial. Finally, the trial court's concern for the effect of the Dane county shooting evidence is shown by the court's cautionary instructions given to the jury on the use of the evidence. This shows that the trial court had considered the possibly prejudicial nature of the shooting evidence and was seeking to ensure that the evidence was used properly by the jury in reaching its verdict.

Having decided that the trial court exercised its discretion in admitting the evidence of the Dane county shooting, we now address the question whether the record supports this determination. The defendant at trial denied that he participated in or encouraged Rice's shooting. However, an alternative explanation of the defendant's involvement in Rice's shooting is evident when the entire course of conduct is reviewed. The defendant admitted he planned and participated in the robbery at the Turner's. He also admitted they were armed and used force during the robbery itself. Implicit in the armed robbery plan must have been the idea that, once the robbery took place, they would escape with the stolen goods and return to Madison. In order to establish that part of the plan included a successful escape which was to be effectuated at all costs, the state needed to introduce evidence showing the defendant's active participation in the events incident to the escape phase of the robbery. We recognize that other crimes evidence is admissible " '[t]o complete the story of the crime on trial by proving its immediate context of happenings near in time and place.' " *Bailey v. State,* 65 Wis. 2d 331, 347, 222 N.W.2d 871 (1974) (citation omitted). We conclude that the Dane county shooting incident was probative in that it ex-

plained the defendant's role in the robbery and escape plan.

Our review of the record leads us to conclude that any unfair prejudice resulting from this evidence does not substantially outweigh its probative value. In any event, we believe the cautionary instructions given to the jury substantially lessened the likelihood that unfair prejudice, if any existed, would affect the jury's verdict.

The defendant also challenges whether the jury's verdict is supported by the evidence.[10]

"We test the sufficiency of the evidence leading to the conviction by the oft-stated rules as follows: This court must affirm if it finds that the jury, acting reasonably, could have found guilt beyond a reasonable doubt. The function of weighing the credibility of witnesses is exclusively in the jury's province, and the jury verdict will be overturned only if, viewing the evidence most favorably to the state and the conviction, it is inherently or patently incredible, or so lacking in probative value that no jury could have found guilt beyond a reasonable doubt."

*Fells v. State,* 65 Wis. 2d 525, 529, 223 N.W.2d 507 (1974) (footnotes omitted).

The state's case against the defendant was tried on the theory that the defendant and Timothy Rice conspired to commit the Turner robbery. The jury was given a conspiracy instruction. Under sec. 939.05, Stats., a person may be charged and convicted as a principal, even if he did not directly commit the criminal act, if he conspires to commit a crime and another crime (for which the defendant is charged) occurs as "a natural and probable

---

[10] The evidence on the bindover and the jury verdict is in all relevant respects identical. Therefore, we will address only the question of the jury verdict because if we determine that the evidence was sufficient to establish guilt beyond a reasonable doubt, the lesser probable cause standard for bindover will have been met.

consequence of the intended crime." Sec. 939.05(2)(c). In this case the evidence clearly shows that the defendant and Timothy Rice conspired to commit the Turner robbery. The crucial question then becomes whether Rice's shooting occurred as a natural and probable consequence of the robbery.

The Turner robbery could not be entirely successful until there was an undetected escape from the scene of the robbery and a return to the "safe harbor" of Madison, where the stolen goods could have been disposed. The defendant and the Rice's clearly contemplated the use of force to effectuate their robbery plans. This is shown by their carrying and using handguns during the robbery itself and the presence of the gun on the front seat of the escape vehicle. It is logical to assume that, if force was used to acquire the property in the robbery, it would be employed to protect the property in the escape phase of the robbery. Thus, the defendant and the Rice's were resolved to use all means necessary to make an escape back to Madison with their stolen property.

The defendant contended that the shots fired by Rice came as a complete surprise. The jury could reasonably question the truth of this contention. When the car was stopped by Gustafson, the defendant did not know whether they were being stopped because of the robbery. He reasonably could have reached two conclusions at this point: either the trooper already knew of the robbery, or the trooper could be expected to identify the car and the defendant when the trooper later learned of the robbery. Under either situation, the defendant and his cohorts were in jeopardy of being discovered and apprehended at this point in the escape. The defendant implicitly acknowledged this when he told Timothy Rice to tell the trooper they were moving Rice's sister. The defendant was making an excuse which would explain the presence of the stolen goods, not an excuse to explain the traffic

violation for which the defendant claimed he thought they were being stopped. Further, the defendant testified that he knew they were in serious trouble once the trooper noticed the gun on the front seat of the car.

Any doubts as to the defendant's involvement in Rice's shooting could be resolved by the defendant's conduct during the high-speed chase which followed. The defendant's shooting at Trooper Luther in order to get him to "back off" so they could escape is evidence that the jury reasonably could use to conclude that the defendant fully participated in an escape attempt which was to be effectuated at all costs, including Rice's attempted first-degree murder of Trooper Gustafson.

██

The defendant has contended that the robbery and escape attempt were separate acts. The defendant argues that they had reached a "safe harbor" once they left the robbery scene and entered I-90 to return to Madison. Therefore, the defendant asserts, Rice's shooting was not a natural and probable consequence of the robbery because the robbery itself was over. We disagree with this reasoning. The robbery was not complete until a successful escape was made. In fact, the early morning return to Madison, with a car fully loaded with stolen goods shortly after a violent armed robbery, was perhaps the most dangerous part of the whole episode in terms of detection and apprehension by the police. We note that, after receiving the report of the armed robbery, it is most likely that the police would look first for the escape vehicle. Because the trio needed to make a successful escape and were prepared to use force to effectuate and complete their criminal acts, we conclude that Rice's shooting at Trooper Gustafson was a natural and probable consequence of the Turner robbery. We further conclude that the evidence in this case would permit a jury, acting reasonably, to find the defendant guilty beyond a

reasonable doubt of attempted first-degree murder, party to a crime.

Finally, the defendant contends that we should reverse his conviction because justice has miscarried. Sec. 751.-06, Stats., gives this court the power to reverse the judgment of conviction if "it is probable that justice has for any reason miscarried." We have concluded that the jury, acting reasonably, could have convicted the defendant of the crime charged. A review of the record does not lead to the conclusion that the defendant's conviction constituted a miscarriage of justice. Accordingly, we decline to reverse the defendant's conviction.

*By the Court.*—The decision of the court of appeals is affirmed.