CAMELOT ENTERPRISES, INC., d/b/a Merlyn's, Plaintiff-Respondent,

v.

Irene MITROPOULOS, Defendant-Appellant.

Court of Appeals

*No. 88-0584. Submitted on briefs March 9, 1989.—Decided June 8, 1989.*

(Also reported in 444 N.W.2d 401.)

For the defendant-appellant the cause was submitted on the briefs of *John F. Jenswold* and *Allen A. Arntsen,* and *Jenswold, Studt, Hanson, Clark & Kaufmann,* of Madison.

For the plaintiff-respondent the cause was submitted on the brief of *Eric K. Graf* and *McBurney, Perina, Wyngaard, Wilson & Raymond,* of Madison.

Before Gartzke, P.J., Dykman and Eich, JJ.

GARTZKE, P.J.   Irene Mitropoulos appeals from a judgment in favor of Camelot Enterprises, Inc., for $47,600.85 damages and costs, and from an order denying her motion for a new trial. Mitropoulos contends that the trial court abused its discretion in three respects: first, by refusing to allow her substitute counsel to undertake additional discovery and designate experts after her original counsel withdrew from the case; second, by quashing a subpoena served on Camelot's principal owner to produce business records at the trial; and third, by failing to order a new trial in the interests of justice. For her first point, she relies on *Alexander v. Riegert,* 141 Wis. 2d 294, 414 N.W.2d 636 (1987). We conclude that *Alexander* is inapplicable. We find no merit in the remaining points she raises and we decline her request that we order a new trial under sec. 752.35, Stats. We therefore affirm.

Mitropoulos leased part of a building to Camelot for use as a nightclub. In February 1983 the principal owner of the nightclub went to Mexico and authorized the club manager to close it temporarily. Camelot did not pay the rent due on the 15th of that month. After consulting her lawyer, Mitropoulos cancelled Camelot's lease and

locked out the tenant. When the nightclub's owner returned, Camelot obtained a temporary restraining order authorizing its reentry. After again consulting her lawyer, Mitropoulos refused to let Camelot reenter. Camelot sued Mitropoulos for damages arising from the lockout and violation of the court order. The same lawyer who advised Mitropoulos on the lockout represented her in the lawsuit.

On July 9, 1985 the trial court entered a scheduling order. The order required Mitropoulos to designate her expert witnesses by September 1, 1985 and provided that all discovery would be completed by November 1, 1985. Camelot timely designated its experts. Mitropoulos designated none and undertook no discovery before November 1, 1985.

The case was set for jury trial, beginning June 25, 1986. The first trial date was adjourned and rescheduled when her lawyer failed to appear for jury selection. The trial date was reset to December 23, 1986. Before that date, no motion was filed by or on behalf of Mitropoulos to name expert witnesses or to undertake any discovery. Because of the death of Mitropoulos's father, the trial was again postponed until February 16, 1987.

On January 14, 1987, Mitropoulos, through her lawyer, served a request for production of documents on Camelot. Camelot sought a protective order on grounds that the request was no more than attempted discovery which was untimely because of the discovery cutoff. The court granted a protective order. In late January 1987, Mitropoulos retained two additional attorneys as co-counsel with her first lawyer. The new attorneys decided that her first lawyer's involvement in the underlying dispute required his testimony at the trial.

On February 12, 1987, four days before the scheduled trial date, Mitropoulos's new attorneys moved for

an adjournment and a new scheduling order to allow counsel to take discovery and present expert witnesses at trial on grounds that Mitropoulos's first lawyer had withdrawn as counsel. On February 13, 1987 the court denied the motion, noting that the first lawyer had not yet asked the court's permission to withdraw from the case.

On the day of the trial, Mitropoulos's first lawyer moved to withdraw as counsel on grounds that he was to be a witness.[1] Mitropoulos's new attorneys moved for a continuance to implead the first lawyer as a party on grounds that he had misadvised Mitropoulos. The trial court granted the first lawyer's motion to withdraw but denied the motion for continuance.

The jury was drawn, but because of *voir dire* problems, the trial court granted Camelot's motion for a continuance. Mitropoulos renewed her request for a new scheduling order but none was issued, and the case was reset for trial commencing October 12, 1987. At a pretrial conference, Mitropoulos's new attorneys again moved to be allowed to undertake discovery and name expert witnesses. They argued they should not be compelled to defend her without pretrial discovery and designation of expert witnesses, merely because of the first lawyer's inaction. The trial court denied the motion.

On October 6, 1987 Mitropoulos's new attorneys served a subpoena on the principal owner of Camelot. The subpoena directed the owner to produce certain bus-

---

[1] The relevant supreme court rule then provided that a lawyer shall withdraw from conduct of the trial if "it is obvious that he or she . . . ought to be called as a witness on behalf of his or her client." SCR 20.25(1) (1987). The new rule, which became effective January 1, 1988, states that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness." SCR 20:3.7.

iness records at the trial. The trial court quashed the subpoena on grounds that it was unduly burdensome and had been issued in an attempt to evade the discovery deadlines.

After a verdict in favor of Camelot, Mitropoulos sought a new trial in the interest of justice and because of the trial court's alleged error in refusing to modify the pretrial order to allow pretrial discovery and designate expert witnesses. She relied on *Alexander.* The trial court denied the motions, entered judgment on the verdict, and this appeal ensued.

*Alexander* is not in point. In *Alexander* the trial judge issued a scheduling order directing the plaintiffs to name their expert witnesses within ten days. 141 Wis. 2d at 296, 414 N.W.2d at 637. Plaintiffs timely named their experts. *Id.* Because plaintiffs' counsel had represented a defendant on other matters, the trial court later ruled that a potential conflict of interest existed and ordered plaintiffs' attorney to withdraw. *Id.* at 297, 414 N.W.2d at 638. Plaintiffs' new counsel moved to modify the scheduling order to allow calling additional expert witnesses, but the trial court denied the motion. *Id.*

On appeal, the *Alexander* court held that failure to modify the scheduling order was an abuse of discretion. *Id.* at 295, 414 N.W.2d at 637. Since the request to modify the scheduling order was by "a successor attorney who was unable to present plaintiffs' case properly due to a prior attorney's judgment or decisions which may have been at least influenced by a real or apparent conflict of interest," the *Alexander* court held that the motion should have been granted. *Id.* at 301, 414 N.W.2d at 640.

██

*Alexander* is distinguishable on the facts. In that case, the conflict arose out of the prior relationship of

the plaintiff's attorney with a defendant and the conflict could have interfered with adequate representation. As the *Alexander* court noted, the purpose of the trial court's order that the plaintiff's attorney withdraw was "to assure the plaintiffs that to which all litigants are entitled: the single-minded representation of an advocate devoted exclusively to their interests." 141 Wis. 2d at 300, 414 N.W.2d at 639.

Nothing in the record before us suggests that Mitropoulos's first lawyer had any prior connection with Camelot Enterprises. Nothing permits the inference that his continued representation of Mitropoulos would deprive her of the singleminded representation of an advocate devoted exclusively to her interests. The only reasonable inference is to the contrary.

His representation of Mitropoulos was such that he could well anticipate that he would be liable to her for malpractice, should Camelot win. He had every incentive to vigorously try the case. His unexplained failure to timely name expert witnesses and undertake discovery may have been due to a lapse of professional competency, and it may be that he poorly advised Mitropoulos before suit was brought. But the holding in *Alexander* protects the client from the adverse effects of a conflict of interest, not from incompetency of counsel.[2]

The trial court considered the attempt to subpoena Camelot's principal owner to be an effort to avoid the scheduling order. Whether the trial court properly

---

[2] On appeal, Mitropoulos argues that her first lawyer had to withdraw because of a conflict of interest. However, his motion requested permission to withdraw "on the grounds that he is a witness in the case," and the court explicitly stated that its order granting leave to withdraw as counsel was based on the representation "that [he] will be a witness at the time of trial."

quashed the subpoena therefore turns on whether the court abused its discretion by refusing to revise its scheduling order. Since we have affirmed that refusal, we conclude that the court's quashing of the subpoena was not an abuse of discretion.

■

Mitropoulos's post-trial motions included a request for a new trial in the interest of justice. Section 805.15(1), Stats., authorizes a trial court to grant a new trial in the interest of justice. Unlike sec. 752.35, Stats., which permits the court of appeals to order a new trial "if it appears from the record that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried," sec. 805.15(1) is silent regarding the circumstances under which the trial court may grant a new trial in the interest of justice. The trial court denied the motion for a new trial in the interest of justice without comment. Under these circumstances, we examine the record for facts which would support the court's discretionary decision, had it properly exercised its discretion. *State v. Pharr,* 115 Wis. 2d 334, 343, 340 N.W.2d 498, 502 (1983).

■

To support her claim that the trial court abused its discretion, Mitropoulos asserts that justice was not served and significant aspects of the real controversy were not tried. Because no one knows what discovery would have revealed, the trial court could not have determined whether the real controversy was or was not tried, and therefore had a basis for rejecting this contention. No showing was made regarding what expert testimony Mitropoulos would have presented. The court's refusal to order a new trial in the interest of justice has not been shown to be an abuse of discretion.

Finally, Mitropoulos requests that we order a new trial under sec. 752.35, Stats. We decline the request. We cannot determine whether the real controversy has or has not been fully tried. To order a new trial on grounds it is probable that justice has miscarried, we must conclude that a different result is likely on retrial. *State v. Wyss,* 124 Wis. 2d 681, 741, 370 N.W.2d 745, 773 (1985). We have no reason to draw that conclusion. For us to order a new trial under sec. 752.35 would be an abuse of discretion.

For the reasons stated, we conclude that the judgment must be affirmed.

*By the Court.*—Judgment and order affirmed.